BRYSON, ADMINISTRATRIX, RESPONDENT, *v.* GREAT NORTH-ERN RY. CO., APPELLANT.

(No. 4,521.)

(Submitted October 26, 1921.   Decided November 23, 1921.)

[203 Pac. 529.]

*Personal Injuries — Railroads — Control by Director-General of Railroads—Parties—Appeal and Error—Substitution of Party Defendant—Jurisdiction.*

Personal Injuries—Railroads While Under Control of Director-general of Railroads—Proper Party Defendant.
1.  In an action against a railway company to recover damages for personal injuries suffered during the time defendant company's road was being operated by the director-general of railroads, the proper party defendant was the director-general and not the company.

Same — Judgment Against Improper Party Defendant — Substitution of Proper Party by Supreme Court Unauthorized.
2.  Where, in an action against a railway company for damages for the death of a locomotive engineer in a collision at a time when defendant's road was in the possession and control of the director-general of railroads under the Federal Control Act, the defendant company ineffectually endeavored to have the director-general substituted as the proper party defendant, the supreme court, on appeal by the company from a judgment in favor of plaintiff, is without jurisdiction, on motion of plaintiff, to substitute the director-general for the company and affirm the judgment, or order substitution and a new trial, but will reverse the judgment and order dismissal of the complaint.

*Appeals from District Court,, Flathead County; T. A. Thompson, Judge.*

ACTION by Sadie L. Bryson, Administratrix of the Estate of John A. Bryson, deceased, against the Great Northern Rail-

1.  Effect of federal control of railroads on action for injury, see notes in 4 A. L. R. 1710; 8 A. L. R. 983; 10 A. L. R. 969.
Substitution of director-general of railroads for carrier company as

way Company. Judgment for plaintiff, and from it and an
order denying a new trial, defendant appeals. Reversed and
cause remanded, with direction to dismiss the complaint.

*Mr. I. Parker Veazey, Jr.,* and *Messrs. Noffsinger & Walchli,*
for Appellant, submitted a brief; *Mr. Veazey* argued the cause
orally.

The complaint does not state a cause of action. The only
way it can be treated as stating a cause of action is by assum-
ing that the plaintiff used his allegations in regard to the cor-
poration as a fiction authorized by the President as a con-
venient designation of the government which had directed
that its operations should be conducted in this name and that
it might be sued in this name. If, however, the plaintiff can
successfully maintain that this was not the intention and that
he seriously intended to urge that the corporation was the
operator and was personally liable, then the complaint does
not state a cause of action, for, although it alleges operation
by the corporation, the court knows judicially the contrary.
The corporation thus could not constitutionally be made re-
sponsible for the acts of the government which, by presidental
edict, had ousted it of its property. The property of A can-
not be taken to respond directly or indirectly for the obliga-
tions of B. To hold the corporation liable for the act of the
government or its employees after the corporation had been
required to dismiss its employees and to yield possession of
its railroad would be to take the property of the corporation
without due process of law. (*Hatcher & Snyder* v. *Atchison,
T. & S. F. Ry. Co.,* 258 Fed. 952; *Northern Pac. Ry. Co.* v.
*North Dakota,* 250 U. S. 135, 63 L. Ed. 897, 39 Sup. Ct.
Rep. 502; *Rutherford* v. *Union Pac. R. Co.,* 254 Fed. 880;
*Nash* v. *Southern Pacific,* 260 Fed. 280; *Southern Cotton Oil
Co.* v. *Atlantic etc. Co.,* 257 Fed. 138; *Nueces Valley Town-
site Co.* v. *McAdoo,* 257 Fed. 143; *Mardis* v. *Hines,* 258 Fed.
945; *Haubert* v. *Baltimore etc. R. Co.,* 259 Fed. 361; *Schu-
macker* v. *Pennsylvania R. Co.,* 106 Misc. Rep. 564, 175 N. Y.

Supp. 84; *Jackson-Tweed Lbr. Co.* v. *Southern Ry. Co.*, 113 S. C. 236, 101 S. E. 924; *Harmon* v. *Hines*, 113 S. C. 179, 101 S. E. 925; *Harmon* v. *Southern Ry. Co.*, 113 S. C. 188, 101 S. E. 926.)

*Messrs. Walsh, Nolan & Scallon, Mr. J. E. Erickson* and *Messrs. Logan & Child,* for Respondents, submitted a reply brief and one on motion to substitute the director-general of railroads for defendant railway company; *Mr. Sidney M. Logan* and *Mr. C. B. Nolan* argued the cause orally.

Before the promulgation of Order No. 50, an inspection of the cases will disclose the most chaotic condition as to how actions should be brought and maintained on account of the operation of the railroads by the government. Sometimes actions were brought against the railroad company and the director-general, and sometimes actions were brought against the companies without this joinder occurring. No particular good can be subserved by referring to these decisions. They are collected and collated in exhaustive notes in the following American Law Reports: 4 A. L. R. 1680; 8 A. L. R. 969; 10 A. L. R. 956, and 11 A. L. R. 1450. See, also, *Globe & Rutgers Fire Ins. Co.* v. *Hines,* 273 Fed. 774. These conflicting decisions justified the honest belief entertained by counsel for respondent that the action could be maintained against the company, and justified the belief, too, entertained by counsel representing the defendant company, that the action could be maintained as it was, but that the judgment should provide that by reason of its rendition, no personal liability, so far as the company was concerned, should attach, and that the government of the United States should provide for its satisfaction. It is true that after the McAdoo Order No. 50 was promulgated, the legal atmosphere suffered some clarification, and it was then that the defendant company asked that the director-general should be brought expressly into the suit as a party, and that the company should be eliminated entirely. Even then courts were holding that

[61 Mont. 351.]

this order was invalid, as it was in conflict with the provision of the Act of Congress of March 23, 1918, as this Act required that actions should be conducted against the railway companies. It is well to bear in mind the fact, too, that long before the promulgation of this Order No. 50, a judgment in the instant case was entered. This was the situation when the Ault decision (*Missouri Pac. R. Co.* v. *Ault*, 256 U. S. 554, 65 L. Ed. 647, 41 Sup. Ct. Rep. 593) was rendered by the supreme court of the United States. The proclamation of the President which provided for the operation of the railroads by the government gave no information as to how actions could be instituted and carried on, and the director-general, until the promulgation of Order No. 50, failed to give any information of this nature. In the instant action, the accident occurred while the government was in control of the road, and, as already stated, the government failed to advise in any way how the action might be maintained against it until Order No. 50 was published. It is true, likewise, that under the Act of March 31, 1918, courts of eminent respectability were holding that no action could be maintained against the director-general, and that the actions that were brought should be brought against the railroad companies.

The decision in the *Ault Case* disposes of the case against the company. The judgment against it must be reversed and the cause of action against is must be dismissed. This leaves for consideration, then, the question as to whether the government can be substituted here, and, if not, then the question arises as to the order that shall be made requiring it˙ to expressly appear in the action.

We insist, in the first place, that although the government was not expressly named as defendant, through the company, it appeared in the case, and is bound by the judgment rendered therein. (23 Cyc. 1245; 15 R. C. L. 1009; *Ludy* v. *Larsen,* 78 N. J. Eq. 237, 37 L. R. A. (n. s.) 957, 79 Atl. 687; Bigelow on Estoppel, 113, 114; 2 Van Fleet on Former

Adjudications, sec. 525; *Stoddard* v. *Thompson,* 31 Iowa, 80; Herman on Estoppel & Res Judicata, sec. 156.)

Assuming that the government has not been prejudiced, should the substitution order be refused on account of anything that transpired during the trial? If the proceedings that took place were of such a character that all of its rights were conserved as if it were expressly by pleadings a litigant in the case, is not the court authorized to make the order of substitution prayed for? If, however, this order is not made, then is not the court authorized in reversing the judgment against the railway company and ordering a dismissal of the action against it, to order that respondent can amend her complaint so as to name the government or its agent a defendant in the action? The answers to these questions depend on what can be accomplished through the power of amendment to be exercised by the court.

The disposition of courts is toward liberality in the allowance of amendments at all stages of the proceedings. An amendment was allowed after *remittitur* in the supreme court where the original injury complained of was adhered to. (*Flaherty* v. *Butte Electric Ry. Co.,* 43 Mont. 141, 115 Pac. 40.) The court will sanction the allowance of amendments with great liberality where the nature of the cause of action is not changed, even after entry of judgment. (*Leggat* v. *Palmer,* 39 Mont. 302, 102 Pac. 327.) That these amendments, when allowable at all, may be allowed by appellate courts, see L. R. A. (n. s.) 1916D, 841. The case of *Boehmke* v. *Northern Ohio Traction Co.,* 88 Ohio St. 156, 102 N. E. 700, bears a striking resemblance to the instant one; there it was held that substitution of a defendant may be made for one sued as defendant by mistake. (See, also, *Adams* v. *Weeks,* 174 Mass. 45, 54 N. E. 350; *Bainum* v. *American Bridge Co. of N. Y.,* 141 Fed. 179; *McCord-Collins Co.* v. *Prichard,* 37 Tex. Civ. 418, 84 S. W. 388; *Wright* v. *Eureka Tempered Copper Co.,* 206 Pa. St. 274, 55 Atl. 978.)

Where a damage suit was instituted jointly against two railroad companies two years from the accident, and a judgment in favor of the plaintiff was reversed because of misjoinder of defendants, an amendment of the petition in the original action by leaving out the defendant wrongfully joined and otherwise setting forth the same cause of action did not set up a new cause of action, so as to be barred by limitations, although more than two years had expired when the amendment was made. (*Texas-Midland R. R.* v. *Cardwell* (Tex. Civ.), 67 S. W. 157.) Of like tenor and of like effect are the following cases: *Cox* v. *San Joaquin L. & P. Co.*, 33 Cal. App. 522, 166 Pac. 578; *Ruiz* v. *Santa Barbara G. & E. Co.*, 164 Cal. 188, 128 Pac. 330; *Reardon* v. *Balaklala Cons. Copper Co.*, 193 Fed. 189; *Philadelphia B. & W. R. Co.* v. *Gatta*, 4 Boyce (Del.), 38, Ann. Cas. 1916E, 1227, 47 L. R. A. (n. s.) 932, 85 Atl. 721; *Hagenauer* v. *Detroit Copper Min. Co.*, 14 Ariz. 74, Ann. Cas. 1914C, 1016, 124 Pac. 803; *Boudreaux* v. *Tucson Gas, E. L. & P. Co.*, 13 Ariz. 361, 33 L. R. A. (n. s.) 196, 114 Pac. 547; *Motsenbocker* v. *Shawnee G. & E. Co.*, 49 Okl. 304, L. R. A. 1916B, 910, 152 Pac. 82. The supreme court of the United States has repeatedly discussed the questions we are now considering, especially in cases that have arisen under the federal liability law, holding that amendments of the character involved can be made after the statute of limitations has run. (*Missouri K. & T. R. Co.* v. *Wulf*, 226 U. S. 570, Ann. Cas. 1914B, 134, 57 L. Ed. 355, 33 Sup. Ct. Rep. 135; *Fidelity Title & Trust Co.* v. *Dubois Electric Co.*, 253 U. S. 212, 64 L. Ed. 865, 40 Sup. Ct. Rep. 514; *Kansas City Western Ry. Co.* v. *McAdow*, 240 U. S. 51, 60 L. Ed. 520, 36 Sup. Ct. Rep. 252; *Wabash R. Co.* v. *Hayes*, 234 U. S. 86, 58 L. Ed. 1226, 34 Sup. Ct. Rep. 729; *Seaboard Air Line Ry.* v. *Renn*, 241 U. S. 290, 60 L. Ed. 1006, 36 Sup. Ct. Rep. 567 [see, also, Rose's U. S. Notes].) Statutes of limitations do not apply to amendments to a complaint or declaration unless such amendments introduce new causes of action. (*Texas & Pac. Ry. Co.* v. *Cox*, 145 U. S. 593, 36 L. Ed. 829,

12 Sup. Ct. Rep. 905 [see, also, Rose's U. S. Notes]; *Helm* v. *Hines* (Kan.), 198 Pac. 190.)

Decisions of the courts relating to substitution of director-general for railway company: *Anderson* v. *Minneapolis St. P. etc. R. Co.,* 146 Minn. 430, 179 N. W. 45; *Hines* v. *Parry* (Tex. Civ.), 227 S. W. 339; *Helm* v. *Hines* (Kan.), 198 Pac. 190; *Peacock* v. *Detroit G. H. & M. R. Co.,* 208 Mich. 403, 8 A. L. R. 964, 175 N. W. 580; *Atchison T. & S. F. Ry. Co.* v. *Francis* (Tex. Civ.), 227 S. W. 342; *Robinson* v. *Central of Georgia Ry. Co.,* 150 Ga. 41, 102 S. E. 532; *Westbrook* v. *Director General of Railroads,* 263 Fed. 211; *Gundlach* v. *Chicago & N. W. R. Co.,* 172 Wis. 438, 179 N. W. 577, 985; *Payne* v. *Hayes,* 25 Ga. App. 730, 104 S. E. 917; *Lanier* v. *Pullman Co.,* 180 N. C. 406, 105 S. E. 21; *Atchison, T. & S. F. Ry. Co.* v. *Francis* (Tex. Civ.), 227 S. W. 342; *Panhandle & S. F. Ry. Co.* v. *Haywood* (Tex. Civ.), 227 S. W. 347.

In *Gundlach* v. *Chicago & N. W. Ry. Co.,* 172 Wis. 438, 179 N. W. 577, 985, a motion to substitute the agent named by the President under the terms of the Transportation Act was granted by the Wisconsin supreme court in a case where recovery was had in the lower court against the railway company. (See, also, *Goldstein* v. *Hines,* 183 N. Y. Supp. 518; *Payne* v. *Hayes,* 25 Ga. App. 730, 104 S. E. 917; *Panhandle & S. F. Ry. Co.* v. *Haywood* (Tex. Civ.), 227 S. W. 347; *Atchison, T. & S. F. Ry. Co.* v. *Francis* (Tex. Civ.), 227 S. W. 342; *Hines* v. *Collins* (Tex. Civ.), 227 S. W. 332.)

*Mr. A. A. McLaughlin,* General Solicitor, United States Railroad Administration, submitted a brief, in opposition to motion to substitute the Director-general of Railroads for defendant railway company; *Mr. T. B. Weir,* of Counsel, making oral argument.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an appeal from the judgment and order denying defendant's motion for a new trial. Upon verdict of a jury,

judgment for $25,000 damages was rendered and entered by
the district court of Flathead county against the defendant
railway company, in an action brought by plaintiff for the
benefit of the heirs of John A. Bryson, deceased, a locomotive
engineer killed in the course of his employment, February 3,
1918, by reason of a collision, through alleged negligence on
defendant's part while engaged in operating its railroad in
interstate commerce. At the time the accident occurred, de-
fendant's railroad was in the possession and under the con-
trol of the United States, under and by virtue of proclamation
of the President, effective December 31, 1917 (40 Stat. 1733),
pursuant to war powers vested in him as commander in chief
of the army (sec. 2, Art. II, Const.) by Act of Congress of
August 29, 1916 (39 Stat. 619, 645; U. S. Comp. Stats., sec.
1974a; 9 Fed. Stats. Ann., 2d ed., p. 1095), later ratified
by the Federal Control Act of March 21, 1918 (40 Stat. 451;
U. S. Comp. Stats. 1918, U. S. Comp. Stats. Ann. Supp. 1919,
secs. 3115¾a–3115¾p; Fed. Stats. Ann. 1918, p. 757), all of
which was by the defendant railway company urged in de-
fense.

The action was brought by plaintiff by complaint filed April
10, 1918, on the theory that liability was created by the Em-
ployers' Liability Law (35 Stat. 65; U. S. Comp. Stats.,
secs. 8657–8665; 8 Fed. Stats. Ann., 2d. ed., pp. 1208, 1339),
rather than the federal control Act; it being argued that no
new liability was created, that suits were not abated because
of federal possession, and that the carrier might be sued as
before.

The case was tried July 2, 1918, and judgment was entered
[1]    August 28, 1918. By demurrer and answer filed, and
throughout the trial, the defendant contended that, since
the United States was in control of and operating its railroad,
no responsibility rested upon it for the negligent death com-
plained of, and that the director-general of railroads, ap-
pointed by the President of the United States, rather than
it, was the proper party defendant. The trial court took a

contrary view, and in consequence verdict and judgment was, as stated, rendered against the defendant railway company. It is now conceded by the plaintiff that the trial court was in error, and that the proper party defendant was the director-general of railroads, rather than the Great Northern Railway Company, and by motion filed the plaintiff now seeks on this appeal to have this court order a substitution of the agent designated by the President under the Transportation Act of 1920 (41 Stat. 456) in lieu of the defendant, Great Northern Railway Company. Furthermore, the defendant has filed with this court a motion for judgment because of improper party defendant, and James C. Davis, agent for the government, has appeared and made objection to the jurisdiction of this court to grant an order substituting parties defendant.

It is conceded by plaintiff's counsel that the cause must be [2] reversed as to the defendant company, and the only question presented necessary for our decision is whether it is within the jurisdiction of this court to order a substitution of the party defendant, so as to make the judgment entered herein effectual against James C. Davis, as agent, under the Transportation Act, rather than the defendant railway company, or to grant a new trial permitting such substitution of the party defendant, and a retrial of the issues as to the new party defendant.

By the Act of Congress of August 29, 1916, it is provided: "The President, in time of war, is empowered, through the secretary of war, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable."

Pursuant to this enactment the President issued his proclamation of December 26, 1917, reading in part as follows:

"It is hereby directed that the possession, control, operation and utilization of such transportation systems hereby by me undertaken shall be exercised by and through William G. McAdoo, who is hereby appointed and designated director-general of railroads. Said director may perform the duties imposed upon him, so long and to such extent as he shall determine, through the boards of directors, receivers, officers and employees of said systems of transportation. Until and except so far as said director shall from time to time by general or special orders otherwise provide, the boards of directors, receivers, officers and employees of the various transportation systems shall continue the operation thereof in the usual and ordinary course of the business of common carriers, in the names of their respective companies."

And section 10 of the Act of March 21, 1918, designated as the Federal Control Act, wherein the action of the Chief Executive in taking over the possession and control of the operation of the railroads in the United States was ratified and approved, reads in part as follows: "That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other Act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agent of the federal government. Nor shall any such carrier be entitled to have transferred to a federal court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the federal control of such carrier; and any action which has heretofore been so transferred because of such federal control or of any Act of Congress or official order or proclamation relating thereto

shall upon motion of either party be retransferred to the court in which it was originally instituted. But no process, mesne or final, shall be levied against any property under such federal control."

It seems clear from these statutes and the proclamation of the President that the defendant corporation cannot be held liable for the wrongful death of which complaint is made. Although the Federal Control Act was not passed until after the accident in question, yet it was effective and made plain the government's independent liability at the time this action was commenced. Until its enactment, the government had not given its consent to be sued, but that made no difference as respects the question of primary liability for the death made the basis of the action. Even though the government could not be sued, it would be manifestly unjust to hold the defendant corporation responsible for the government's negligent operation of the railroad, simply because the government could not be reached.

Aside from the Federal Control Act, the government was in fact in possession of and conducting defendant's railroad by virtue of the assertion of its sovereign power. Defendant was ousted, and had nothing to do with train operations on its line at the time of the accident, and it would be absurd to hold the defendant corporation accountable for negligent train operations by the government. True it is that the procedural remedy was not clear, and there was diversity of opinion expressed by the courts as to accountability for such torts after the President's proclamation; however, after the promulgation by the director-general of railroads of General Order No. 50, issued October 28, 1918, the subject was made clear and set at rest. That order reads in part as follows: "Whereas, since the director-general assumed control of said systems of transportation, suits are being brought and judgments and decrees rendered against carrier corporations on matters based on causes of action arising during federal control for which said carrier corporations are not responsible,

and it is right and proper that the action, suits and proceedings hereinafter referred to based on causes of action arising during or out of federal control should be brought directly against the said director-general of railroads and not against said corporation: It is therefore ordered that actions at law, suits in equity and proceedings in admiralty hereafter brought in any court based on contract, binding upon the director-general of railroads, claims for death or injury to person, or for loss and damage to property arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the director-general of railroads, which action, suit or proceeding but for federal control might have been brought against the carrier company, shall be brought against William G. Mc-Adoo, director-general of railroads, and not otherwise: Provided, however, that this order shall not apply to actions, suits or proceedings for the recovery of fines, penalties and forfeitures. * * * The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may on application be amended by substituting the director-general of railroads for the carrier company as party defendant and dismissing the company therefrom.''

This order made plain the fact that the government and not the defendant corporation was operating the defendant's railroad, and that the government rather than the defendant is accountable for the negligence alleged, resulting in the death of plaintiff's intestate. In the case of *Northern P. Ry. Co.* v. *North Dakota,* 250 U. S. 135, 63 L. Ed. 897, 39 Sup. Ct. Rep. 502, involving the state's right to fix rates on intrastate business, Mr. Chief Justice White, speaking for the court, said: ''No elaboration could make clearer than do the Act of Congress of 1916, the proclamation of the President exerting the powers given, and the Act of 1918 dealing with

the situation created by the exercise of such authority, that no divided but a complete possession and control were given the United States for all purposes as to the railroads in question. But if it be conceded that despite the absolute clarity of the provisions concerning the control given the United States, and the all-embracing scope of that control, there is room for some doubt, the consideration of the general context completely dispels hesitancy. How can any other conclusion be reached if consideration be given the comprehensive provisions concerning the administration by the United States of the property which it was authorized to take, the financial obligations under which it came and all the other duties and exactions which the Act imposed, contemplating one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided the private ownership theretofore existing? This being true, it must follow that there is no basis for the contention that the power to make rates and enforce them which was plainly essential to the authority given was not included in it. Conclusive as are these inferences, they are superfluous, since the portion of section 10 as previously reproduced in the margin in express terms confers the complete and undivided power to fix rates.''

In view of this decision there can be no doubt as to the extent of the power conferred upon the President by Congress. (*Hatcher & Snyder* v. *Atchison, T. & S. F. Ry. Co.* (D. C.), 258 F. 1. 952.) In the case of *Missouri Pacific R. Co.* v. *Ault,* 256 U. S. 554, 65 L. Ed. 647, 41 Sup. Ct. Rep. 593, a somewhat similar situation to that under consideration arose; the action being for wages due July 29, 1918, the date Ault was discharged as an employee of the carrier. Therein it was by the court said: ''The company is clearly not answerable in the present action if the ordinary principles of common-law liability are to be applied. The railroad administration established by the President in December, 1917, did not exercise its control through supervision of the owner companies, but

by means of a director-general through 'one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority to replace, for the period provided, the private ownership theretofore existing.' (*Northern Pac. R. Co.* v. *North Dakota,* 250 U. S. 135, 148, 63 L. Ed. 897, 902, P. U. R. 1919D, 705, 39 Sup. Ct. Rep. 502.) This authority was confirmed by the Federal Control Act of March 21, 1918, Chapter 25, 40 Stat. 451, and the ensuing proclamation of March 29, 1918, 40 Stat. 1763. By the establishment of the railroad administration and subsequent orders to the director-general, the carrier companies were completely separated from the control and management of their systems. Managing officials were 'required to sever their relations with the particular companies and to become exclusive representatives of the United States Railroad Administration.' (U. S. R. R. Adm. Bulletin No. 4, pp. 113, 114, 313.) The railway employees were under its direction, and were in no way controlled by their former employers. (See Bulletin No. 4, p. 168, sec. 5, 198 *et seq.,* 330 *et seq.*) It is obvious, therefore, that no liability arising out of the operation of these systems was imposed by the common law upon the owner companies, as their interest in and control over the systems were completely suspended. * * * It is urged that, since section 10, in terms, continues the liability of 'carriers while under federal control,' and permits suit against them, it should be construed as subjecting the companies to liability for acts or omissions of the railroad administration, although they are deprived of all the power over the properties and the personnel. * * * Such a radical departure from the established concepts of legal liability would at least approach the verge of constitutional power. It should not be made in the absence of compelling language. (*United States ex rel. Atty. Gen.* v. *Delaware & H. Co.,* 213 U. S. 366, 408, 53 L. Ed. 836, 848, 29 Sup. Ct. Rep. 527.) There is not such here. * * * The government was to operate the carriers, but the usual im-

munity of the sovereign from legal liability was not to protect the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which would exist if there were a general receivership of each transportation system. * * * If the cause of action arose while the government was operating the system, the 'carrier while under federal control' was, nevertheless, to be liable and suable. This means, as a matter of law, that the government or its agency for operation could be sued, for under the existing law the legal person in control of the carrier was responsible for its acts. (See *Gracie* v. *Palmer,* 8 Wheat, 605, 632, 633, 5 L. Ed. 696, 703 [see, also, Rose's U. S. Notes].) The title by which suit should be brought—the person who should be named as defendant—was not designated in the Act. * * * All doubt as to how suit should be brought was cleared away by General Order No. 50, which required that it be against the director-general by name. As the Federal Control Act did not impose any liability upon the companies on any cause of action arising out of the operation of their systems of transportation by the government, the provision in Order No. 50, authorizing the substitution of the director-general as defendant in suits then pending, was within his power, the application of the Missouri Pacific Railroad Company that it be dismissed from this action should have been granted, and the judgment against it should therefore be reversed." (See, also, *Western Union Tel. Co.* v. *Poston,* 256 U. S. 662, 65 L. Ed. 709, 41 Sup. Ct. Rep. 598.)

These decisions are conclusive; but, aside from them, to us it appears elementary that it is not within the province or jurisdiction of this court to grant a new trial merely because it appears that judgment has been had against the wrong party. More especially so when, as in this case, the defendant used its utmost endeavors in the trial court to have the proper party defendant substituted for it. We cannot at this juncture of the proceedings say this is a meritorious case; the judgment is warranted, but you have sued and obtained a judgment against a party not legally responsible; therefore

the cause is reversed and remanded, with directions to substitute a new party defendant, and proceed to a trial *de novo* as against such new party. Such procedure is unheard of and unjustifiable, and we venture to say that, if the case were one between individual litigants, plaintiff's learned counsel would not be heard to seriously advance such a proposition.

Neither are we authorized, nor is it within our jurisdiction, to substitute a new party defendant and affirm the judgment as to such substituted party. The plaintiff deliberately elected to sue the corporation, as the party primarily responsible, and rejected the efforts made by the defendant to have the director-general of railroads substituted, and insisted that the defendant corporation alone was the party responsible. The defendant company seasonably asserted and persisted in maintaining its nonliability, since the government was in possession, control, and operation of its railroad at the time of the negligent death of the plaintiff's intestate. Were we to order a substitution of parties defendant at this time, and affirm the judgment as against the new defendant, we feel that our action would be arbitrary and wholly unwarranted. The judgment must stand or fall on its merits as against the party as to whom it has been rendered, and new parties cannot thus be brought in and substituted arbitrarily without process or hearing, and made to respond in damages without being given their day in court. Indeed, learned counsel for the plaintiff, while insisting upon a reversal of the judgment as to the defendant corporation, frankly admitted on the argument in this court "that if the government is now in this case for the first time, no order of substitution can be made."

The judgment and order appealed from are reversed and the cause is remanded, with directions to dismiss plaintiff's complaint.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Associate Justices Reynolds, Cooper and Holloway concur.

Rehearing denied December 28, 1921.