JESSE DeWITT, Plaintiff, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Defendant.

JOHN A. FISHER, Plaintiff, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Defendant.

DEMKO MELNIEZNK, Plaintiff, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Defendant.

MIKE LITUS, Plaintiff, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Defendant.

Supreme Court, Albany Special Term, October, 1922.

Railroads — Federal control — substitution of director-general as party defendant in negligence action — when plaintiff not guilty of laches.

A railway company is not liable either at common law or under section 10 of the Federal Control Act (U. S. Stat. at Large, 1918, chap. 25) upon a cause of action arising out of the operation of its railroad by the government through the director-general of railroads.

Pursuant to the authority vested in him by chapter 418 of the United States Statutes for 1916, the President of the United State issued a proclamation

to take possession and assume control through the Secretary of War, of every system of transportation at twelve o'clock noon on December 28, 1917. The Federal Control Act, section 8 of which provided that " The President may execute any of the powers herein and heretofore granted him with relation to federal control through such agencies as he may determine," and section 10 of said act which in part provides " that carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control or with any order of the President," was approved March 21, 1918, and on the same day four separate actions were brought against the New York Central Railroad Company to recover for personal injuries sustained by the plaintiffs by reason of a collision between a train of a railroad leased by said defendant and a trolley car in which the plaintiffs were passengers. *Held,* that as after the issuance of order No. 50 by the director-general of railroads on October 28, 1918, in which no limitation of time was fixed within which an application for substituting him for the carrier company as party defendant must be made, the present actions could not be continued against the original party, and the liability therein, by operation of law and without the intervention of any voluntary act on the part of the carrier devolved upon the government only through substitution had of its agent directly in charge of the federal control operations, a motion under section 206 of the Transportation Act, 1920, for the substitution of the director-general of railroads as defendant in each of said actions in the place and stead of the New York Central Railroad Company, and to amend and change the pleadings and titles in said actions accordingly, will be granted but without costs.

The two years' limitation provided for in section 206-a of the Transportation Act (U. S. Stat. at Large, chap. 91, approved February 28, 1920, by which federal control of railroads terminated March 1, 1920), is in no way a limitation upon pending suits which were dealt with in subdivision 6 of that section and their continuance provided for by substitution of the agent of the president.

The history of the present and other actions arising from the same accident as set forth in the moving papers justify the conclusion that the plaintiffs here have not been guilty of such laches as to deny them their day in court. Civ. Prac. Act, § 2.

The provisions of the act of February 8, 1899 (30 U. S. Stat. at Large, 1922, chap. 121) were not intended to comprehend actions in which government liability was involved and have no application to the cases at bar.

Motion to substitute another as party defendant.

*William D. Brinnier, Jr.* (*Palmer Canfield,* of counsel), for plaintiffs.

*Evan Shelby,* appearing specially for James C. Davis, director-general of railroads, as agent under section 206 of the Transportation Act, 1920.

Staley, J. The plaintiffs in the above actions move for an order substituting James C. Davis, director-general of railroads, as agent, under section 206 of the Transportation Act, 1920, or the proper person or government agent, as defendant in each of the above-entitled actions, in place of the defendant, the New York

Central Railroad Company, and amending or changing the pleadings and titles in said actions accordingly.

The actions are brought to recover for personal injuries alleged to have been sustained by the plaintiffs herein, on March 4, 1918, by reason of a collision within the city of Kingston, between a train of the West Shore railroad, leased by the defendant, the New York Central Railroad Company, with a trolley car, in which the plaintiffs were passengers.

The actions were commenced on March 21, 1918, against the defendant, the New York Central Railroad Company, by · the service of a summons in each of the above cases.

That the defendant herein is not liable either at common law or under section 10 of the Federal Control Act upon a cause of action arising out of the operation of its railroad by the government through the director-general of railroads is conclusively established. *Missouri Pac. R. R. Co.* v. *Ault,* 256 U. S. 554; *Western Union Tel. Co.* v. *Poston,* Id. 662; *Bryson* v. *Great Northern Ry. Co.,* 203 Pac. Rep. 529.

The disposition of this motion turns upon a determination of whether the agent of the government appointed by the president to wind up the affairs incident to the governmental control of the railroads can now be substituted as a defendant herein.

Chapter 418 of the United States Statutes for the year of 1916 provided that " The President in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable."

Pursuant to this authority the president of the United States, on December 26, 1917, issued his proclamation to take possession and assume control, through the secretary of war, of every system of transportation at twelve o'clock noon, on December 28, 1917.

The proclamation of the president among other things contains the following:

" It is hereby directed that the possession, control, operation and utilization of such transportation systems hereby by me undertaken shall be exercised by and through William G. McAdoo, who is hereby appointed and designated Director General of Railroads. Said Director may perform the duties imposed upon him, so long and to such extent as he shall determine, through the Boards of Directors, Receivers, officers and employes of said systems

of transportation. *Until and except so far as said Director shall from time to time by general or special orders otherwise provide,* the Boards of Directors, Receivers, officers and employes of the various transportation systems shall continue the operation thereof in the usual and ordinary course of the business of common carriers, in the names of their respective companies.

" *Until and except so far as said Director shall from time to time otherwise by general or special orders determine,* such systems of transportation shall remain subject to all existing statutes and orders of the Interstate Commerce Commission, and to all statutes and orders of regulating commissions of the various states in which said systems or any part thereof may be situated. But any orders, general or special, hereafter made by said Director, shall have paramount authority and be obeyed as such."

On March 21, 1918, the date upon which these actions were commenced, the Federal Control Act (U. S. Stat. at Large, 1918, chap. 25) was approved. Section 8 of this act provided that " The President may execute any of the powers herein and heretofore granted him with relation to Federal control through such agencies as he may determine."

Section 10 of this act in part provides as follows: " That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other Act applicable to such Federal control or with any order of the President. *Actions at law or suits in equity, may be brought by and against such carriers and judgment rendered as now provided by law;* and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government."

Until the enactment of this section the government had not given its consent to be sued, and by it the immunity of the sovereign was waived.

It will be observed that this section provided that actions at law may be brought against such carriers, and liability of the government assumed in such suits where the cause of action arose during federal control. The manner in which suits may be brought was not modified until the promulgation on October 28, 1918, of order No. 50 issued by the director-general of railroads, which in part is as follows:

" Whereas, since the Director General assumed control of said systems of transportation, suits are being brought and judgments and decrees rendered against carrier corporations on matters based

on causes of action arising during Federal control for which said carrier corporations are not responsible, and it is right and proper that the action, suits and proceedings hereinafter referred to based on causes of action arising during or out of Federal control should be brought directly against the said Director General of Railroads and not against said corporations: It is therefore, ordered that *actions at law,* suits in equity and proceedings in admiralty *hereafter brought* in any court based on contract, binding upon the Director General of Railroads, claims for death or injury to person, or for loss and damage to property arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit or proceeding but for Federal control might have been brought against the carrier company, *shall be brought* against William G. McAdoo, Director General of Railroads, *and not otherwise.* The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, *now pending* against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, *may on application be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom.*"

It is to be noted that as to suits pending on October 28, 1918, *which include the actions here in question,* no limitation of time was fixed within which the application for substituting the director-general of railroads for the carrier company must be made.

On February 28, 1920, the Transportation Act (being U. S. Stat. at Large, chap. 91) was approved and by this act federal control of railroads terminated March 1, 1920. Subdivision A of section 206 of this act provides as follows:

"*Actions at law,* suits in equity and proceedings in admiralty, based on causes of action arising out of the possession, use, or operation by the President of the railroad or system of transportation of any carrier (under the provisions of the Federal Control Act, or of the Act of August 29, 1916) of such character as prior to Federal control could have been brought against such carrier, *may, after the termination of Federal control, be brought against an agent designated by the President for such purpose,* which agent shall be designated by the President within thirty days after the passage of this Act. Such actions, suits, or proceedings may, within the periods of limitation now prescribed by State or Federal statutes but not later than two years from the date of the passage **of this** Act, be brought in any court which but for Federal control

would have had jurisdiction of the cause of action had it arisen against such carrier."

This section sets forth a procedure and authorizes the *commencement* of actions which accrued during the period of federal control against the agent designated by the president within thirty days after the passage of the act, provided such suits were commenced not later than two years from the date of the act.

Subdivision D of section 206 provides as follows:

"*Actions*, suits, proceedings, and reparation claims, of the character above described *pending at the termination of Federal control shall not abate* by reason of such termination, *but may be prosecuted to final judgment*, substituting the agent designated by the President under subdivision (a)."

From the above quoted provisions of law, presidential proclamation and order of the director-general of railroads, it appears (1) That when federal control of the railroads was assumed by the president, his proclamation directed that the operation thereof shall continue in the usual and ordinary course of business in the names of the respective companies and that such systems shall remain subject to all existing statutes *until and except so far as the director-general shall otherwise by general or special orders determine*. (2) The Federal Control Act specifically provided that actions at law may be brought against such carriers and judgment rendered as then provided by law, and (3) that the manner of bringing actions at law, other than against the carrier, was not established until the promulgation of order No. 50 on October 28, 1918, which order recognizes the practice of bringing suits and rendering judgment directly against the carrier for cause of action arising out of federal control, and provided that suits thereafter brought shall be commenced against the director-general and not otherwise, and further ratified and confirmed the validity of existing suits brought against the carrier and provided for amendment on application to the court by the substitution of the director-general as party defendant in place of the carrier. (4) That the Transportation Act of 1920, subdivision A, section 206, likewise recognizes the validity of *suits of the character described in the act* pending at the termination of federal control, and provided that such suits shall not abate but may be prosecuted to final judgment by substituting the agent designated by the president. (5) That the suits described in the act were such as arose out of the operation by the government and of such character as prior to federal control could have been brought against such carrier.

The actions here in question were brought prior to the promulgation of order No. 50 and they were pending suits at that time.

That they were properly brought at the time of their commencement is not questioned. The agent of the president appears specially and opposes the substitution of the agent of the president for the defendant carrier and urges that the right of substitution has been barred by the lapse of time and particularly urges that the two years' limitation provided for in subdivision A, section 206 of the Transportation Act and the twelve months' limitation provided in the act of February 8, 1899, chapter 121, has conclusive application, and further urges that the denial of a motion heretofore made for substitution is *res adjudicata* on the question here presented.

The limitation of subdivision A, section 206, relates to the commencement of actions, that is new actions, where the cause thereof arose during federal control, no action having been brought during that period, and it applies to such actions the limitations prescribed by state or federal statutes except that such limitation shall not extend beyond two years from the date of the passage of the act.

It in no way is a limitation upon pending suits which were dealt with in subdivision D of that section and their continuance provided for by substitution of the agent.

The authorities relied upon by regional counsel do not apply to the facts and status of the actions at bar upon which application here is made.

In *Bryson* v. *Great Northern Ry. Co.*, 203 Pac. Rep. 529, the Supreme Court of Montana held, on appeal, that where a judgment was rendered against a railroad company, the appellate court could not substitute the federal agent as defendant and affirm the judgment as against him. In the case here in question no judgment has been rendered and if the agent of the government is substituted he will have his day in court and the purpose of the substitution is to have a judgment, if any is rendered, against the agent who is the responsible party and not against the railroad company.

In *Weil* v. *N. Y. Central R. R. Co.*, N. Y. L. J. May 11, 1922, the action was commenced in October, 1921, against the railroad company to enforce a claim incurred during federal control and the court stated that upon the facts plaintiffs can state no cause of action against the defendant and can bring no new action against the director-general of railroads because the time within which to do so has expired. The application to amend the summons by substituting the director-general was denied. This action was not a pending action at the termination of federal control but a new action commenced subsequent and was clearly regulated by

the provisions of subdivision A, section 206 of the Transportation Act of 1920 and suit required to be brought against the agent of the president and within the limitation of time therein prescribed.

In *Tutsch* v. *Director-General of Railroads*, 199 Pac. Rep. 861, the cause of action arose July 24, 1919, but action was brought on July 24, 1920, against the director-general of railroads as sole defendant. This action was likewise not pending at the termination of federal control and should have been brought against the agent of the president. Subsequent to the expiration of the time within which the action might be commenced against the agent according to the period of limitation of the state statute, amendment was sought making the agent a party defendant. This was denied because contrary to subdivision A, section 206 of the Transportation Act.

In *Atkinson* v. *Philadelphia, B. & W. R. Co.*, 113 Atl. Rep. 110, the defendant railroad company was sued for a cause of action arising during federal control. At the time the suit was brought the Transportation Act of 1920 had been passed but no agent appointed by the president. A demurrer was sustained because the wrong defendant was sued and the application to amend by substituting the agent denied because the law of Maryland does not permit a sole defendant to be supplied by amendment. The plaintiff in this action, however, had opportunity to bring his case against the agent because his action at the time of the decision was not barred by the lapse of time.

In *Currie* v. *Louisville & N. R. Co.*, 90 So. Rep. 313, the action also arose during federal control but suit was not commenced until subsequent to its termination and then against the railroad company as sole party defendant. The court in its opinion said: " This cause of action arose in April, 1919, during federal control of railroads. The railroads were returned to the owners by act of Congress on February 28, 1920; and under this act John Barton Payne was designated as the Agent to be sued. This was done before this suit was filed. *This was not a pending suit at the time.* This suit was filed against this defendant on April 14, 1920. *The substitution of the designated Agent for the defendant in all pending suits as authorized by the act is not applicable to this case.* This was not a pending suit when the federal control terminated. It should have been filed against John Barton Payne, Director General of Railroads. It was filed against the Louisville & Nashville Railroad Company. A granting of the motion to substitute John Barton Payne, the Agent designated by the President, as the sole party defendant, would work an entire change of the party defendant and thereby offend our amendment laws, and this substitution

is not authorized under the federal act of Congress, *as it was not a pending cause when the federal control terminated.*"

No case has been called to my attention which limits the right of substitution of the proper government agent in any suit pending at the time of the issuance of order No. 50, or at the time of the passage of the Transportation Act in 1920, and that relief would seem to be left in the sound discretion of the court, subject, perhaps, to a consideration of the plea of laches in the making of the application, unless the act of congress of February 8, 1899 (30 U. S. Stat. at Large, chap. 121), applies and controls the procedure of substitution.

This act provides as follows: " No suit, action, or other proceeding lawfully commenced by or against the *head* of any Department or Bureau or other *officer* of the United States in his official capacity, or in relation to the discharge of his official duties, shall abate by reason of his death, or the expiration of his term of office, or his retirement, or resignation, or removal from office, but, in such event, the Court, on motion or supplemental petition filed, at any time within twelve months thereafter, showing a necessity for the survival thereof to obtain a settlement of the questions involved, may allow the same to be maintained by or against his successor in office, and the Court may make such order as shall be equitable for the payment of costs."

The enactment of this law would seem to have been inspired by judicial decision and suggestion.

In *United States ex rel. Bernardin* v. *Butterworth*, 169 U. S. 600, decided March 21, 1898, Mr. Justice Shiras in the opinion of the court said: " In view of the inconvenience, of which the present case is a striking instance, occasioned by this state of the law, it would seem desirable that Congress should provide for the difficulty by enacting that, in the case of suits against the *heads* of the department abating by death or resignation, it should be lawful for the successor in office to be brought into the case by petition, or some other appropriate method."

The suits against the heads of departments, " abating by death or resignation," referred to in the opinion, related to actions for mandamus against an officer of the government, and as to this class of actions the Supreme Court had uniformly held that such actions abated by death or resignation of the officer because of their personal character, and the reasoning upon which the determination was based was stated by Mr. Justice Strong in *United States* v. *Boutwell*, 84 U. S. 604, as follows: " The office of a writ of mandamus is to compel the performance of a duty resting upon the person to whom the writ is sent. That duty may have

originated in one way or in another. It may, as is alleged in the present case, have arisen from the acceptance of an office which has imposed the duty upon its incumbent. But no matter out of what facts or relations the duty has grown, what the law regards and what it seeks to enforce by a writ of mandamus, is the personal obligation of the individual to whom it addresses the writ. If he be an officer, and the duty be an official one, still the writ is aimed exclusively against him as a person, and he only can be punished for disobedience. The writ does not reach the office. It cannot be directed to it. It is, therefore, in substance a personal action, and it rests upon the averred and assumed fact that the defendant has neglected or refused to perform a personal duty, to the performance of which by him the relator has a clear right. Hence it is an imperative rule that previous to making application for a writ to command the performance of any particular act, an express and distinct demand or request to perform it must have been made by the relator or prosecutor upon the defendant, and it must appear that he refused to comply with such demand, either in direct terms or by conduct from which a refusal can be conclusively inferred. Thus it is the personal default of the defendant that warrants impetration of the writ, and if a peremptory mandamus be awarded, the costs must fall upon the defendant. It necessarily follows from this, that on the death or retirement from office of the original defendant, the writ must abate in the absence of any statutory provision to the contrary."

That such abatement did not take place where the suit was against the government was recognized in *Thompson* v. *U. S.*, 103 U. S. 480, in which Mr. Justice Bradley said: " The cases in which it has been held by this court that an abatement takes place by the expiration of the term of office have been those of officers of the Government, whose alleged delinquency was personal, and did not involve any charge against the Government, whose officers they were." See, also, *Warner Valley Stock Co.* v. *Smith*, 165 U. S. 28.

The act of 1899 is limited by its terms to actions commenced against the *head* of any department or bureau or other officer of the United States. It obviously referred to and intended to include only actions of a personal character, such as mandamus and not to comprehend actions in which government liability was involved.

These provisions do not apply to the cases at bar: (1) Because such actions are not within the intendment of their terms; (2) because these actions were not commenced against the head of any department or bureau or officer of the United States; (3)

30

because this particular class of actions was governed by the proclamations, orders and statutes relating specially to federal control and the liability of the government arising therefrom; (4) because section 206(A) of the Transportation Act provided without qualification that such actions shall not abate, but may be prosecuted to final judgment, substituting the agent of the president, with no limitations of time upon the right or liability of such substitution; (5) because the action did not abate by reason of the death, expiration of the *term* of office, retirement, resignation or removal from office of the head of a department of the government, but only by reason of the termination of federal control and the withdrawal of consent; and (6) because the agent appointed under subdivision A of section 206, *supra*, was not a successor *in office* to the director-general, but an incumbent of a new office, newly created for a particular purpose.

An action does not abate by an event if the cause of action survives or continues. Civ. Prac. Act, § 82. In case of a devolution of liability an action may be continued by or against the original party unless the court directs the person upon whom the liability is devolved to be substituted in the action. Civ. Prac. Act, § 83. After the issuance of order No. 50 these actions could not be continued against the original party, and the liability therein, by the operation of law, and without the intervention of any voluntary act on the part of the carrier, devolved upon the government only through suit brought against, or substitution had, of its agent directly in charge of the federal control operations.

In an action at law no mere lapse of time will absolutely defeat an application for the revival of an action and continuance thereof in the name of a representative, but the action may be denied for laches in making it. *Mason* v. *Sanford*, 137 N. Y. 497.

The history of these and other actions arising from the same event as set forth in the moving papers justifies the conclusion that the plaintiffs here have not been guilty of such laches as to deny them their day in court. Liberality of practice in the furtherance of justice is now the compelling mandate of our law. Civ. Prac. Act, § 2.

In November, 1920, an associate justice denied an application for the change of the place of trial and for the substitution of John Barton Payne, as agent, as defendant in the actions instead of the New York Central Railroad Company. The irregularity of this application is apparent from the papers upon which it was made. The notice of motion and the order discloses that the application was made by the attorney of a person not a party to the actions, and whose successor is now resisting being made a

party to the actions, and further, that the defendant, the New York Central Railroad Company, was not notified or represented on the motion. The moving party who was the director-general assumed he was the real defendant and so styled himself. Since this irregularity appears on the face of the papers, the motion may well have been denied on that ground. *Stephens* v. *Hall*, 25 Abb. N. C. 300. Moreover, the rules applicable to judgments or estoppels are not applicable to their full extent to orders on motions. *Riggs* v. *Pursell*, 70 N. Y. 370. It is incumbent on a party claiming an estoppel to make out a clear case, and it cannot be sustained by doubtful inferences, or where the record is consistent with a subsequent claim. *Carter* v. *Beckwith*, 128 N. Y. 312, 323.

The motion for substitution and conformable amendment is, therefore, granted, without costs, and order may be entered accordingly.

Ordered accordingly.