Graham, Judge,
delivered the opinion of the court.
The petition herein was exhibited by three, parties plaintiff, World Publishing Company, Tulsa Paper Company, and Democrat Printing Company, each claiming a distinct and separate amount. None of the claims are joint.
The practice in this court does not authorize the joinder of several claimants in one petition where the asserted claims are separate and distinct from each other, but requires that a separate petition be filed by each plaintiff, where no other *2 is interested in his particular claim. Wilson's case, 1 C. Cls. 318.
An order dismissing the case will be entered unless some one or more of the plaintiffs, within thirty days from the announcement of the court’s decision, shall take proper steps to correct the misjoinder. Attention was called to this practice at the hearing, but a ruling was held in abeyance to enable the parties to present the demurrer, which raises a jurisdictional question.
The plaintiffs were shippers of freight over sundry railroads prior to and after the assumption of control of the railroad systems by the United States Government. They claimed that the rates charged them for certain shipments were unjust and unreasonable and instituted proceedings before the Interstate Commerce Commission to recover damages for loss due to the exaction of payment of said rates. The Interstate Commerce Commission sustained their contention and found that the rates charged were relatively unjust and unreasonable and that the plaintiffs had been “ damaged to the extent of the difference between the charges so paid and those which would have accrued at the rates herein found just and reasonable”; and that they were entitled to reparation with interest; and directed that statements showing details of the shipment, in accordance with the rule of practice in the commission, should be prepared, specifying the dates on which the charges were made and also the dates on which the charges were paid, and submitted to the defendant for verification. These statements were prepared and submitted to the defendant and verified and the verified statements submitted to the commission, whereupon the commission on the 8th day of November, 1920, entered an order reciting that the parties had filed statements with respect to shipments in question, and stating that the plaintiffs were entitled to an award of reparation from the defendant as named in the table contained in the order for the amounts set opposite their respective names with interest. In this order awards of reparation were made as follows:
“To Tulsa Paper Company against John Barton Payne, Director General of Railroads as agent, $1,335.44, with interest from October 1,1918.
*3 “Democrat Printing Company against John Barton Payne, Director General of Railroads as agent, $44,444.08, with interest from September 10, 1918.
“World Publishing Company against John Barton Payne, Director General of Railroads as agent, $5,876.89, with interest from November 25, 1918.”
No appeal was taken from this order. The plaintiff is here seeking on behalf of these three plaintiffs to recover separate judgments on behalf of each of them in the above amounts with interest.
These shipments involved in the awards above set out, it is averred in the petition, were made during the period from December 29, 1917, to March 1, 1920, the period of Federal control. The dates of each particular shipment and other details are not given.
The act of August 29,1916, 39 Stat. 619, 645, entitled “An act making appropriations for the support of the Army for the fiscal year ending June 80, 1917, and for other purposes,” contains the following provision:
“ The President in time of war is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable.”
On April 6, 1917, Congress passed a joint resolution declaring a state of war to exist between the United States and the Imperial German Government. On the 7th of December, 1917, Congress passed another joint resolution declaring a state of war to exist between the United States and the Imperial and Royal Austro-Hungarian Government. By each of these resolutions the President was “ authorized and directed to employ the entire naval and military forces of the United States and the resources of the Government to carry on war * * * and to bring the conflict to a successful termination, all the resources of the country are hereby pledged by the Congress of the United States.”
On December 26, 1917, the President issued a proclamation reciting the said act of August 29,1916, by which he an *4 nounced that he had at 12 o’clock noon on December 28,1917, through the Secretary of War, taken possession and assumed control of each and every system of transportation and the appurtenances thereto, located wholly or in part within the bounds of the United States, consisting of railroads, etc.
On March 21, 1918, 40 Stat. 451, Congress passed what was known as the Federal control act, which was afterwards amended by the act of March 2, 1919, 40 Stat. 1290. This act confers jurisdiction upon this court under certain conditions in connection with the ascertainment of the compensation to the railroads for their use and control, 40 Stat. 454. Nowhere else in the act is jurisdiction specifically and in terms given to this court.
The act provides that the President may initiate rates, fares, charges, classifications, regulations, and practices by filing the same with the Interstate Commerce Commission and that these shall not be suspended by the commission pending final determination; that the rates, charges, etc., shall be reasonable and just and shall take effect at such time and upon such notice as he may direct; that the Interstate Commerce Commission on a complaint “ shall ” enter upon a hearing concerning the justness and reasonableness of any order establishing or changing any rate, charge, etc., and in so doing may consider all the facts and circumstances existing at the time of the making of said order; that the Interstate Commerce Commission in determining the question thus raised “shall give due consideration to the fact that the transportation systems are being operated under a unified and coordinated national control and not in competition; and that after a full hearing “the commission may make such findings and orders as are authorized by the act to regulate commerce as amended, and said findings and orders shall be enforced as provided in said act.”
This is purely a jurisdictional question. The United States Government can not be sued without its consent and can only be sued when that consent has been given. It can declare in what court it may be sued and prescribe the forms of pleading and rules of practice to be observed. McElrath v. United States, 102 U. S. 426, 440. The jurisdiction of this *5 court must precisely appear and “can not be enlarged by implication.” Price v. United, States, 174 U. S. 373, 375.
This suit arises under the act of Congress of March 21, 1918, 40 Stat. 456, known as the Federal control act. This act does not precisely, or in terms, confer upon this court jurisdiction of a claim of the character presented here. It might be said that had Congress intended to confer jurisdiction it would have clearly so provided. It did, in terms, confer jurisdiction of claims of a different character arising under this act. The act was a part of the war legislation arising out of the exigencies of the late war with Germany. In all the acts passed by Congress growing out of this war emergency, so far as an examination has disclosed, Congress has distinctly and precisely provided a forum of relief, sometimes in this court, sometimes in the District Courts, and sometimes concurrently in both.
Prior to the assumption of control of the systems of transportation by the^ Government this court would have had no jurisdiction to enforce a reparation award of the Interstate Commerce Commission, the jurisdiction being in the District Courts of the United States. Since proceedings before the Interstate Commerce Commission were not materially altered by the Federal control act as to claims of the character of the plaintiffs, there would seem to be no special reason why the forums for relief heretofore existing should not be presumed to have been continued, even if Congress had made no provision to this effect. This, however, Congress did, as heretofore recited. The mere fact that some civil injury may have been suffered while the Government was in control does not give the injured party the right to sue the Government unless its consent appears. It must clearly appear from the provisions of the act that the Government * consented to be proceeded against in this court for claims arising out of the acts of the Director General in the operation of the transportation systems.
It has been held in the case of Missouri Pacific R. R. Co. v. Ault, 256 U. S. 554, that the United States did by this act waive its immunity from liability so far as to permit the enforcement of liabilities ordinarily incident to the opera *6 tion of the railroads as carriers against the Director General of Railroads as agent operating them, bnt he was to be held liable in his capacity as operator of the carriers and to the same extent and in the same manner as. carriers previously had been held liable. The court in that case said:
“The Government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which would exist if there were a general receivership of each transportation system. Operation was to be continued as theretofore with the old personnel, subject to change by executive order. The courts were to go on entertaining suits and entering judgments under existing law, but the property in the hands of the President for war purposes was not to be disturbed. With that exception the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control * * * ??
“ If the cause of action arose while the Government was opertaing the system the ‘ carrier while under Federal control ’ was nevertheless to be liable and suable. This means, as a matter of law, that the Government or its agency for operation could be sued, for under the existing law the legal person in control of the carrier was responsible for its acts.”
It follows that while the director general can be sued, the basis of liability is his agency in operating the carriers, and he is to be held as and where the carriers could have been held had he not been in control; that is to say, in the same courts and by the same procedure which existed prior to Federal control for relief against the carrier. No jurisdiction in such cases was ever in this court. In the case quoted it was held that the director general as the agency for operation could be sued and recovery had against him in a state court. The case, in effect, held that the purpose and effect of the act was simply to place the United States through the Director General of Railroads in charge of the operation of the carriers and not of the corporations owning them; there being preserved by the act to the general public the same rights against him as had existed against a common carrier at the time the railroads were taken over.
It is therefore evident that the plaintiffs’ remedy and the forum for relief against the director general are such as *7 existed prior to the passage of the act unless somewhere in the act there appears specifically some provision to the contrary which confers jurisdiction upon this court. There is no such provision in terms, but the provision of the act dealing specifically with a claim of this kind indicates just to the contrary. Section 10 of the act of March 21, 1918, 40 Stat. 451, 456, .provides that the Interstate Commerce Commission shall hear complaints concerning the justness and reasonableness of rates, and that:
“After full hearing the commission may make such findings and orders as authorized by the act to regulate commerce, as amended, and such findings and orders shall be enforced as provided in said act.” (That is, the act to regulate commerce.) Under that act this court had no jurisdiction to enforce an order of the commission.
It therefore follows that the demurrer should be sustained.
Hat, Judge; Downev, Judge; Booth, Judge; and Campbell, Chief Justice, concur.