ROBINSON *v.* CENTRAL OF GEORGIA RAILWAY CO.

1. The act of Congress of March 21, 1918, recognized liability of the Federal government to suits for injuries received on account of negligence of the agents and servants engaged in operating railroads "while under Federal control," which became operative immediately upon the taking effect, on December 28, 1917, of the President's proclamation

under the act of Congress of August 29, 1916, and was a declaration
of the assent of the government to the institution of such suits.

2. A suit based upon an injury that occurred on March 18, 1918, com-
menced after March 21, 1918, but before the passage of general order
No. 50 by the director-general of railroads (which directed that suits
for injuries resulting from operation of railroads while under Federal
control be brought against the director-general), was maintainable
against the government without the aid of general order No. 50.

3. Where in such suit the railroad company was named as the defend-
ant, and the petition and process were served upon the agents en-
gaged in operating the railroad under governmental control, the suit
was in effect against the government; and the petition could be
amended by substituting as the defendant the director-general in his
representative capacity in lieu of the railroad company.

No. 1325.   FEBRUARY 25, 1920.

The Court of Appeals requested instructions from the Supreme
Court upon the following questions certified in Case No. 9931:

"(*a*)   Did a plaintiff have a right of action for the recovery
of damages for personal injuries alleged to have been sustained
on account of the negligent operation of the cars and trains of a
railroad company, which, on the date of the alleged injury, had
been taken over and was being operated under Federal control,
by virtue of the proclamation of the President of the United States,
dated December 26, 1917, pursuant to the act of Congress approved
August 29, 1916, the petition showing on its face that the alleged
injury was sustained on the 18th day of March, 1918, same being
subsequent to the proclamation of the President referred to, but
prior to the passage of the act of Congress approved March 21,
1918, entitled 'An act to provide for the operation of transportation
system under Federal control,' etc. ?

"(*b*)   Would the fact that the suit in this case was instituted
subsequently to the act of Congress last referred to, to wit, on March
23, 1918, but prior to the issuance of general order No. 50 by the
director-general of railroads, have any bearing upon the plaintiff's
cause for action; or would such a petition seeking to recover
damages from a railroad company under Federal control, which
shows on its face that the alleged injury had been sustained at
some time between December 26, 1917, and March 21, 1918, be
subject to demurrer on the ground that it fails to set out a cause
of action against the defendant?

"(*c*)   If the suit as brought against the railroad company as
defendant was not maintainable, would the plaintiff have the right,

under the authority of this court, to amend his cause by adding or substituting the director-general of railroads as party defendant therein?"

*Hill & Adams*, for plaintiff.

*Little, Powell, Smith & Goldstein* and *Colquitt & Conyers*, for defendant.

ATKINSON, J. The Court of Appeals has propounded certain questions to which the following are answers: On August 29, 1916, (39 Stat. 645), Congress gave the President power "in time of war . . to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion, as far as may be necessary, of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, as may be needful or desirable." After war had been declared with Germany and Austria, the President, on December 26, 1917, referring to the existing state of war and the power with which he had been invested by Congress, proclaimed: "Under and by virtue of the powers vested in me by the foregoing resolutions and statute, and by virtue of all other powers thereto me enabling, [I] do here take possession and assume control at 12 o'clock noon on the twenty-eighth of December, 1917, of each and every system of transportation and the appurtenances thereof located wholly or in part within the boundaries of the continental United States, and consisting of railroads and owned or controlled systems of coastwise and inland transportation engaged in general transportation, whether operated by steam or by electric power, including also terminals, terminal companies, and terminal associations, sleeping and parlor cars, private cars and private car lines, elevators, warehouses, telegraph and telephone lines, and all other equipment and appurtenances commonly used upon or operated as a part of such rail or combined rail and water systems of transportation; to the end that such systems of transportation be utilized for the transfer and transportation of troops, war material and equipment, to the exclusion, so far as may be necessary, of all other traffic thereon; and that so far as such exclusive use be not necessary or desirable, such systems of transportation be operated and utilized in the performance of such other services as the national interest may require, and of the usual and ordinary

business and duties of common carriers." The proclamation in conclusion declared further that "From and after 12 o'clock on said . . day of December, 1917, all transportation systems included in this order and proclamation shall conclusively be deemed within the possession and control of said director without further act or notice." Subsequently to the date appointed for the proclamation to go into effect, the injury which is the basis of this suit occurred on March 19, 1918. After the injury occurred, the act of Congress approved March 21, 1918, became effective. By section 10 thereof it was declared, in part: "That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control, or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers, and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government." Fed. Stat. Ann., 1918 Supp. 762, sec. 10 (U. S. Comp. Stat. Ann. Supp. 1919, § 3115¾j).

1. In virtue of the act of August 29, 1916, c. 418, and the proclamation of the President (U. S. Comp. Stat. Ann. Supp. 1919, § 1974a), which by its terms went into effect at 12 o'clock on the 28th day of December, 1917, the railroads contemplated in the act and proclamation passed into the possession and control of the director-general. Northern Pacific Ry. Co. *v.* North Dakota ex. rel. Langer, 250 U. S. 135 (39 Sup. Ct. 502, 63 L. ed. 897). Section 10 of the act of March 21, 1918 (supra), properly construed, recognizes liability of the government to suit, among other things, for injuries received on account of negligence of the agents and servants engaged in operating the railroad "while under Federal control," which, as above ruled, became operative immediately upon the President's proclamation becoming effective, and was a declaration of the assent of the government to the institution of a suit of such character against it. Westbrook *v.* Director-General of Railroads, 263 Fed. 211.

2. Where an injury occurred between the dates of the President's proclamation and the act approved March 21, 1918, and a

suit based thereon was instituted subsequently to the date of the act, but prior to the assent of general order No. 50 promulgated by the director-general of railroads, which in effect gave directions that suits for injuries resulting from operation of railroads while under Federal control should be brought against the director-general, under proper construction of the act of 1916 and the proclamation of the President and the act of 1918, such suit (of the character involved in this case) was maintainable against the government without the aid of general order No. 50 by the director-general of railroads.

3.   Where a suit of the character just indicated was instituted subsequently to the act of March 21, 1918, and the name of the defendant was alleged as the railroad company and the petition and process were served upon the agents engaged in operating the railroad company, inasmuch as the railroad was being operated by the government, and the government would be suable for any injuries caused by its agents and servants, the suit was in effect against the government. Westbrook *v.* Director-General, supra. Accordingly, the petition could be amended by substituting the director-general of railroads in his representative capacity as defendant in lieu of the railroad company.

*All the Justices concur, except Gilbert, J., absent on account of sickness.*