## MISSOURI PACIFIC RAILROAD COMPANY ET AL. *v.* AULT.

ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 252.   Argued March 22, 1921.—Decided June 1, 1921.

1. A railroad corporation is not liable, either at common law or under § 10 of the Federal Control Act, upon a cause of action (in this case for wages), arising out of the operation of its railroad by the Government, through the Director General of Railroads. P. 557.

2. Under § 10 of the Federal Control Act, if the cause of action arose prior to government control, suit might be instituted or continued to judgment against the owner-company as though there had been no taking over by the Government, save for the immunity of the physical property from levy and the power of the President to regulate suits in the public interest: if it arose during government operation, the "carrier while under Federal control," meaning in this connection the transportation system as distinguished from its corporate owner, was still liable and, by legal implication, suit could be brought against the Government, or its operating agency, as the legal person responsible under the existing law for such carrier's acts. P. 561.

3. The order of the Director General of Railroads providing that suits on causes of action arising from the operation of any carrier during government control should be brought against him, and for his substitution as defendant in pending suits of that class brought against the carrier companies, was within his authority. P. 561.

4. The clause of § 10 of the Federal Control Act declaring that the carriers "shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common

law," and the provision of § 15 that the "lawful police regulations of the several States" shall continue unimpaired, do not permit an action against the Director General to recover a penalty. P. 563.

5. In an action against the Director General of Railroads, the determination whether the liability imposed by a state statute is in the nature of compensation or penalty requires the application of federal law and not state law; and the decision of the highest court of a State imposing a penalty is reviewable in this court on writ of error. P. 564.

140 Arkansas, 572, reversed; petition for writ of certiorari denied.

ERROR to review a judgment of the Supreme Court of Arkansas, affirming a judgment against the plaintiffs in error in an action to recover wages and a penalty. The facts are stated in the opinion.

*Mr. Robert E. Wiley,* with whom *Mr. Edgar B. Kinsworthy* was on the briefs, for plaintiffs in error.

*Mr. Frank Pace,* for defendant in error, submitted. *Mr. D. D. Glover* and *Mr. Jabez M. Smith* were also on the brief.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

A statute of Arkansas provides that whenever a railroad company, or a receiver operating a railroad, shall discharge an employee, with or without cause, it shall pay him his full wages within seven days thereafter and that if payment is not duly made "then as a penalty for such nonpayment the wages of such servant or employee shall continue from the date of the discharge or refusal to further employ, at the same rate until paid." Kirby's Digest, § 6649, as amended by Act of 1905, No. 210. Proceeding under this statute, in August, 1918, Ault brought suit before a justice of the peace against the

Missouri Pacific Railroad Company, alleging that he had been employed by the company at the rate of $2.50 per day, that he had been discharged on July 29, 1918, and that $50 was then due him as wages but had not been paid. He recovered judgment by default. The company appealed to the Circuit Court and there moved, in January, 1919, to substitute as defendant the Director General of Railroads. This substitution the court refused to make; but it joined the Director General as defendant and entered judgment against both him and the company upon a verdict that Ault recover the sum of $50 as debt and $390 as penalty. That judgment was affirmed by the Supreme Court of Arkansas. 140 Arkansas, 572.

The President had taken possession and control of the Missouri Pacific Railroad on December 28, 1917, pursuant to the Proclamation of December 26, 1917, 40 Stat. 1733, under the Act of August 29, 1916, c. 418, 39 Stat. 619, 645.[1] He was operating it through the Director General under the Federal Control Act (March 21, 1918, c. 25, 40 Stat. 451) when Ault was employed, when he was discharged and when the judgment under review was entered. See Transportation Act 1920, Act of February 28, 1920, c. 91, 41 Stat. 456. The company had claimed seasonably that under the acts of Congress it could not be held liable either for the wages or the penalty and that, if the state and federal statutes should be construed as creating such liability, they were in that respect void as to it under the Federal Constitution. The Director General did not contest liability for wages actually due,

---

[1] "The President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable." (39 Stat. 645.)

but claimed that under the legislation of Congress he was not liable for the penalty and that the state statute as applied to him was void under the Federal Constitution. The claims of both defendants having been denied by the highest court of the State, they brought the case here by writ of error.

*First.* The company is clearly not answerable in the present action if the ordinary principles of common-law liability are to be applied. The Railroad Administration established by the President in December, 1917, did not exercise its control through supervision of the owner-companies, but by means of a Director General through "one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided the private ownership theretofore existing." *Northern Pacific Ry. Co.* v. *North Dakota*, 250 U. S. 135, 148. This authority was confirmed by the Federal Control Act of March 21, 1918, c. 25, 40 Stat. 451, and the ensuing Proclamation of March 29, 1918, 40 Stat. 1763. By the establishment of the Railroad Administration and subsequent orders of the Director General, the carrier companies were completely separated from the control and management of their systems. Managing officials were "required to sever their relations with the particular companies and to become exclusive representatives of the United States Railroad Administration." U. S. R. R. Adm., Bulletin No. 4, pp. 113, 114, 313. The railway employees were under its direction and were in no way controlled by their former employers. See Bulletin No. 4, p. 168, § 5; 198, *et seq.;* 330, *et seq.* It is obvious, therefore, that no liability arising out of the operation of these systems was imposed by the common law upon the owner-companies as their interest in and control over the systems were completely suspended.

The contention that the company is liable for acts or

omissions of the Director General in operating the Missouri Pacific Railroad rests wholly upon the following provision of § 10 of the Federal Control Act: [1]

"That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government. . . . But no process, mesne or final, shall be levied against any property under such Federal control."

It is urged that, since § 10, in terms, continues the liability of "carriers while under Federal control" and permits suit against them, it should be construed as subjecting the companies to liability for acts or omissions of the Railroad Administration although they are deprived of all power over the properties and the personnel. And it is said that this construction would not result in hardship upon the companies since the just compensation provided by the act would include any loss from judg-

[1] The provision in § 10 concerning suits is in substance the same as that contained in the following paragraph of the Proclamation of the President of December 26, 1917:

"Except with the prior written assent of said Director, no attachment by mesne process or on execution shall be levied on or against any of the property used by any of said transportation systems in the conduct of their business as common carriers; but suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said Director may, by general or special orders, otherwise determine."

ments of this sort.  Such a radical departure from the
established concepts of legal liability would at least
approach the verge of constitutional power.  It should
not be made in the absence of compelling language.
*United States* v. *Delaware & Hudson Co.,* 213 U. S. 366,
408.  There is none such here.

The plain purpose of the above provision was to preserve
to the general public the rights and remedies against
common carriers which it enjoyed at the time the rail-
roads were taken over by the President except in so far
as such rights or remedies might interfere with the needs
of federal operation.  The provision applies equally to
cases where suits against the carrier companies were
pending in the courts on December 28, 1917; to cases
where the cause of action arose before that date and the
suit against the company was filed after it; and to cases
where both cause of action and suit had arisen or might
arise during federal operation.  The Government was to
operate the carriers, but the usual immunity of the sover-
eign from legal liability was not to prevent the enforcement
of liabilities ordinarily incident to the operation of carriers.
The situation was analogous to that which would exist
if there were a general receivership of each transportation
system.  Operation was to be continued as theretofore
with the old personnel, subject to change by executive
order.  The courts were to go on entertaining suits and
entering judgments under existing law, but the property
in the hands of the President for war purposes was not
to be disturbed.  With that exception the substantial
legal rights of persons having dealings with the carriers
were not to be affected by the change of control.

This purpose Congress accomplished by providing
that "carriers while under federal control" should re-
main subject to all then existing laws and liabilities and
that they might sue and be sued as theretofore.  Here the
term "carriers" was used as it is understood in common

speech; meaning the transportation systems as distinguished from the corporations owning or operating them. Congress had in § 1 declared that such was its meaning. The President took over the physical properties, the transportation systems, and placed them under a single directing head; but he took them over as entities and they were always dealt with as such. Bull. No. 4, p. 113. Each system was required to file its own tariffs. General Order No. 7, Bull. 4, p. 151. Each was required to take an inventory of its materials and supplies. General Order No. 10, *id.* p. 170. Each federal treasurer was to deal with the finances of a single system; his bank account was to be designated "(Name of Railroad), Federal Account." General Order No. 37, *id.* p. 313. Each of 165 systems was named individually in the order promulgating the wage awards of the Railroad Wage Commission. General Order No. 27, *id.* pp. 198, 200. And throughout the orders and circulars there are many such expressions as "two or more railroads or boat lines under federal control." See General Order No. 11, *id.* p. 170.[1] It is this conception of a transportation system as an entity which dominates § 10 of the act. The systems are regarded much as ships are regarded in admiralty. They are dealt with as active responsible parties answerable for their own wrongs. But since levy or execution upon their property was precluded as inconsistent with the Government's needs, the liability of the transportation

---

[1] By § 12 of the act receipts from the operation of each carrier are the property of the United States and, unless otherwise directed by the President, they are to be kept in the custody of the same officers and accounted for in the same way as before federal control. Disbursements are to be made from this fund without appropriation in the manner provided by the accounting regulations of the Interstate Commerce Commission. Under those regulations judgments for damages are chargeable to the operation of the railroad and are payable out of the general receipts.

system was to be enforced by allowing suit to be brought against whoever, as the party operating the same, was legally responsible under existing law, although it were the Government.

Thus, under § 10, if the cause of action arose prior to government control, suit might be instituted or continued to judgment against the company as though there had been no taking over by the Government, save for the immunity of the physical property from levy and the power of the President to regulate suits in the public interest as by fixing the venue, or the time for trial.[1] If the cause of action arose while the Government was operating the system the "carrier while under Federal control" was nevertheless to be liable and suable. This means, as a matter of law, that the Government or its agency for operation could be sued, for under the existing law the legal person in control of the carrier was responsible for its acts. See *Gracie* v. *Palmer*, 8 Wheat. 605, 632–633. The title by which suit should be brought— the person who should be named as defendant—was not designated in the act. In the absence of explicit direction, it was perhaps natural that those wishing to sue the carrier should have named the company as defendant when they sought to hold the Government liable. It doubtless seemed, as suggested in *McNulta* v. *Lochridge*, 141 U. S. 327, 331–332, that suit should be brought against the transportation company "by name 'in the hands of,' or 'in the possession of,' a receiver," or Director General. All doubt as to how suit should be brought was cleared

---

[1] *Muir* v. *Louisville & Nashville R. R. Co.*, 247 Fed. Rep. 888; *Wainwright* v. *Pennsylvania R. R. Co.*, 253 Fed. Rep. 459; *Di Tommaso* v. *Lehigh & New England R. R. Co.*, 28 Pa. Dist. 473; *Bolton* v. *Hines*, 143 Ark. 601; *Le Clair* v. *Montpelier & Wells River R. R. Co.*, 93 Vt. 92; *Benjamin Moore & Co.* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 174 N. Y. S. 60; *Special Rules of Practice During Federal Control*, 50 I. C. C. 797, 798.

away by General Order No. 50, which required that it be against the Director General by name.[1]

As the Federal Control Act did not impose any liability upon the companies on any cause of action arising out of the operation of their systems of transportation by the Government, the provision in Order No. 50, authorizing the substitution of the Director General as defendant in suits then pending was within his power; the application of the Missouri Pacific Railroad Company that it be dismissed from this action should have been granted; and the judgment against it should, therefore, be reversed.[2]

---

[1] "*It is therefore* ordered, that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control, or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit, or proceeding but for Federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise; provided, however, that this order shall not apply to actions, suits or proceedings for the recovery of fines, penalties and forfeitures. . . .

"The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may on application be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom."

[2] The great weight of authority in the federal courts is in favor of this view. See *Rutherford* v. *Union Pacific R. R. Co.*, 254 Fed. Rep. 880; *Dahn* v. *McAdoo*, 256 Fed. Rep. 549; 267 Fed. Rep. 105; *Mardis* v. *Hines*, 258 Fed. Rep. 945; 267 Fed. Rep. 171; *Hatcher & Snyder* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 258 Fed. Rep. 952; *Haubert* v. *Baltimore & Ohio R. R. Co.*, 259 Fed. Rep. 361; *Nash* v. *Southern Pacific Co.*, 260 Fed. Rep. 280; *Westbrook* v. *Director General*, 263 Fed. Rep. 211; *Blevins* v. *Hines*, 264 Fed. Rep. 1005; *Erie R. R. Co.* v. *Caldwell,*

*Second.* The contention that the Director General, being the carrier, is liable for the penalty imposed by the Arkansas statute is rested specifically upon the clause in § 10 to the effect that the carriers "shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law," and the provision in § 15 that the "lawful police regulations of the several States " shall continue unimpaired. By these provisions the United States submitted itself to the various laws, state and federal, which prescribe how the duty of a common carrier by railroad should be performed and what should be the remedy for failure to perform. By these laws the validity and extent of claims against the United States arising out of the operation of the railroad were to be determined. But there is nothing either in the purpose or the letter of these clauses to indicate that Congress intended to authorize suit against the Government for a penalty, if it should fail to perform the legal obligations imposed. The Government undertook as carrier to observe all existing laws; it undertook to compensate any person injured through a departure by its agents or servants from their duty under such law; but it did not undertake to punish itself for any departure by the imposition upon itself of fines and penalties or to permit any other sovereignty to punish it. Congress is

264 Fed. Rep. 947; *Pullman Co.* v. *Sweeney,* 269 Fed. Rep. 764; *Hines* v. *Smith,* 270 Fed. Rep. 132. Contra, *Jensen* v. *Lehigh Valley R. R. Co.,* 255 Fed. Rep. 795; *Johnson* v. *McAdoo,* 257 Fed. Rep. 757; *Dampskibs* v. *Hustis,* 257 Fed. Rep. 862; *The Catawissa,* 257 Fed. Rep. 863.

The cases in the state courts show a considerable diversity of view. See *Commonwealth* v. *Louisville & Nashville R. R. Co.,* 189 Ky. 309; *McGrath* v. *Northern Pacific Ry. Co.,* 177 N. W. Rep. (N. D.) 383; *Peacock* v. *Detroit, G. H. & M. Ry. Co.,* 208 Mich. 403; *Castle* v. *Southern Ry. Co.,* 112 S. Car. 407; *Robinson* v. *Central of Georgia Ry. Co.,* 150 Ga. 41; *Galveston, H. & S. A. Ry. Co.* v. *Wurzbach,* 219 S. W. Rep. (Tex.) 252. Contra, *Mobile & Ohio R. R. Co.* v. *Jobe,* 122 Miss. 696; *Ringquist* v. *Duluth, M. & N. Ry. Co.,* 145 Minnesota, 147.

not to be assumed to have adopted the method of fines paid out of public funds to insure obedience to the law on the part of the Government's railway employees. The Director General adopted a much more effective and direct method: "Now that the railroads are in the possession and control of the Government, it would be futile to impose fines for violations for said laws and orders upon the Government, therefore it will become the duty of the Director General in the enforcement of said laws and orders to impose punishment for willful and inexcusable violations thereof upon the person or persons responsible therefor." General Order No. 8, *id.* p. 167.

The purpose for which the Government permitted itself to be sued was compensation, not punishment. In issuing General Order No. 50, the Director General was careful to confine the order to the limits set by the act, by concluding the first paragraph of the order, "provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties, and forfeitures." Wherever the law permitted compensatory damages they may be collected against the carrier while under federal control. Such damages may reasonably include interest and costs. See *Hines* v. *Taylor*, 79 Florida, 218. But double damages, penalties and forfeitures, which do not merely compensate but punish, are not within the purview of the statute. See *Hines* v. *Taylor, supra; Jackson-Tweed Lumber Co.* v. *Southern Ry. Co.*, 113 S. Car. 236. The amount recovered in the present case over and above the wages due and unpaid with interest is in the nature of a punishment. It is called a penalty in the state statute. The Supreme Court of Arkansas had held that it was not technically a penalty, declaring: "It is allowed for a double purpose, as a compensation for the delay, and as a punishment for the failure to pay. It is composed of all the elements

and serves all the purposes of exemplary damages."
*Leep* v. *Railway Co.,* 58 Arkansas, 407, 440–441.   But
whether in a proceeding against the Director General
it shall be deemed compensation or a penalty presents a
question not of state, but of federal law.   Whatever name
be applied, the element of punishment clearly predomin-
ates and Congress has not given its consent that suits of
this character be brought against the United States.
The judgment against the Director General, so far as it
provided for recovery of the penalty, was erroneous.

The case is properly here on writ of error.   The petition
for writ of certiorari, consideration of which was post-
poned to the hearing on the merits, is therefore denied.

*Judgment reversed.*