**ROSENZWEIG et al. v. HINES, Director General of Railroads, et al.**

(District Court, W. D. New York. April 13, 1922.)

No. 1973.

1. **Railroads ⏃⏃5½, New, vol. 6A Key-No. Series—Federal agent's appearance in action irregularly brought held to confer jurisdiction.**

Under Transportation Act Feb. 28, 1920, § 206, an action may still be brought on a cause of action arising out of government control of the railroads and the fact that such an action is erroneously brought against the former Director General and process served on him will not deprive the court of jurisdiction, where the duly appointed agent of the government appears and answers.

2. **New trial ⏃⏃76(5)—Damages held not excessive.**

Damages awarded for death of a man, who was in business of which his minor children were the beneficiaries, by a jury composed of intelligent and experienced business men, will not be set aside as excessive, where there was evidence to support it and it does not appear that the jury were influenced by prejudice or sympathy.

3. **Railroads ⏃⏃5½, New, vol. 6A Key-No. Series—Interest recoverable in action against federal agent.**

On recovery of damages in an action against the federal agent on a cause of action arising out of government operation of a railroad, plain-

---

tiff is entitled to interest, where interest is recoverable in such case under the law of the state.

At Law. Action by Benjamin Rosenzweig and Edmund J. Stafford, executors of the will of Patrick Doherty, deceased, against Walker D. Hines, as Director General of Railroads, and the New York Central Railroad. On motions by defendants for new trial and for reduction of verdict. Motions denied.

See, also, 280 Fed. 247.

Edmund J. Stafford and Charles P. O'Neil, both of Detroit, Mich., for plaintiffs.

Locke, Babcock, Spratt & Hollister, of Buffalo, N. Y. (Raymond C. Vaughan, of Buffalo, N. Y., of counsel), for defendants.

HAZEL, District Judge. 1. Congress admittedly gave its consent that the United States might be sued in negligence for causes of action arising from its control of the railroads, and by General Order No. 50 the duly appointed Director General lawfully required that such an action be instituted against him instead of against the railroad company, and it has been decided by the Supreme Court, in Missouri Pacific Ry. Co. v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087, that no liability was imposed upon railroad corporations for damages in actions for negligent operation in consequence of the control of such railroads by the government. The consent to be sued has not been wholly extinguished by the provisions of the Transportation Act (41 Stat. 461), since it is there provided (section 206) that pending suits against the Director General and suits to be brought for liability during federal control should be continued and brought against an agent designated by the President, instead of the Director General.

[1] In the present case the liability accrued during the period of governmental control. The process, however, was not served until about six months after the return of the railroad in question to its owner, and it appears that the action was irregularly brought against the Director General, who was not then acting in that capacity or in the capacity of agent against whom the action might properly be brought. Hence the contention is that this court did not obtain jurisdiction of the person of the defendant. But I am of a contrary opinion. Jurisdiction of the subject-matter involved herein and the right to entertain the suit as heretofore shown was specifically derived from the provision relating to federal control, and in my opinion plaintiffs' right of action and the remedy were not abated. Although the Director General was irregularly served with the summons and complaint, I think the designated agent had the right afterwards to waive any irregularity of that nature, and submit himself to the jurisdiction of the court by his general appearance, and answer to the merits, or by his consent to be substituted in the place of the Director General. Having done so by his attorney, he could not in fairness at the trial take the position that he had not been properly served with process in his representative capacity, and thus oust the plaintiffs.

[2] 2. The verdict rendered by the jury, it is true, was very large,

to wit, $95,000, and I have carefully considered the contentions of the defendant that on the proofs it was grossly excessive. The evidence showed that the deceased left him surviving two children, both boys, of the age of 6 and 4 years respectively, and that in his lifetime he was at all times solicitous of their welfare. His expectancy of life was about 31 years. His earnings as a dealer in automobile accessories averaged about $24,000 per annum during the four years immediately preceding his death, and were substantial during the period prior to such time and from the time that he engaged in business. He is shown to have possessed high business capabilities, was frugal and temperate in his habits, his health was good, and there were probabilities of large future financial gains from his business. From the evidence on this point the jury was warranted in concluding, I think, that in all reasonable probability his earnings would not appreciably decrease in future years, and that he no doubt would take excellent care of his children during their minority in the way of maintenance and education.

The jury was composed of capable business men. They were carefully selected, and among them were two who were retired from business, two were managers of businesses and employers of labor, an architect, a broker, a bookkeeper, two farmers, a real estate agent, and a lake captain. No better qualified men could have been chosen to determine the amount of damages to be awarded the children under the instructions of the court. I feel convinced that the jury did not permit themselves to be influenced by prejudice or sympathy, or failure to understand the instructions given them. Indeed, no attempt was made at any stage of the trial to swerve them from their exact duty. While the verdict was large, and quite likely larger than I would have awarded, if the question of amount had been left to me, yet to substitute my views for theirs at this time would be an infringement on the right of the jury to exercise its functions in an action of this description. It is not unlikely that they were aware of the award that had been made at a previous term of court for the death of the mother occurring under the same circumstances; but there was no reference thereto by counsel for plaintiff or by the court.

It is, however, insisted by defendant that the instructions of the court were not followed by the jury, who were to establish the damages at such amount as would represent the present cash value of the pecuniary loss sustained by the beneficiaries because of their loss of training, maintenance, care, and educational advantages which their father, had he lived, would have given them. It cannot be said, however, that this instruction was not obeyed by the jury, there being evidence to support the verdict from this viewpoint.

It is next urged that the amount of the estate of the deceased, as shown by his will, was approximately $22,000 only, that he did not own his home, that no securities of substantial value were left by him, that at times he engaged in speculative ventures in stocks, and, moreover, that his interest indebtedness in the year 1916, as appears by his income tax return, was $5,649, representing an indebtedness of principal of $94,000, and that no income tax return was filed after his death by his executors for 1918. From this the inference is drawn by de-

fendant that the income of the deceased was not as large as plaintiffs' evidence tended to show, that his speculations decreased his income for the use of the children, and that his business at the time of his death was falling off from commercial depression. All of these matters, however, were made much of in summing up to the jury.

There was no convincing evidence of extensive speculations on the stock market, while the indebtedness of 1917 may have extended over past years; it not being presumed that as a total debt it came into existence during that year. Besides, none of these matters appear in any way to have affected his earning capacity, or in depriving his children of any comforts by reason thereof. It is not to be inferred as a matter of law, from the smallness of his estate, that his yearly income was less than the amount shown by the business books in evidence.

There is a paucity of reported adjudications wherein the recovery in actions for negligence is in excess of say $40,000. But in Meng v. Emigrant Industrial Savings Bank, 169 App. Div. 27, 154 N. Y. Supp. 509, the estate of Justice Bischoff, who was killed by falling down an elevator shaft, was awarded $100,000 damages by a Supreme Court jury. This amount was later reduced by consent of the plaintiff to $70,000. The verdict was sustained by the Appellate Division. The salary of the deceased was $17,500 per annum, and his expectancy of life was approximately 14 years. By comparison of annual gains and expectancy of life the verdict in this case was not, in my opinion, so excessive as to warrant granting a new trial or in reducing the verdict of the jury.

[3] 3. The plaintiff is entitled to interest on the recovery, even though the action was against the sovereign, because ordinarily a liability of this description in this state (section 1904, Code Civ. Proc.) included the right to recover interest, and the defendant, in his capacity as agent of the United States, having submitted himself to liability of the kind specified in the complaint, is not relieved from the payment of interest. In U. S. v. North American Transportation & Trading Co., 253 U. S. 330, 40 Sup. Ct. 518, 64 L. Ed. 935, decided by the Supreme Court in June, 1920, it was held that, though generally payment of interest is not implied against the sovereign, yet where a statute under which the liability was enforced provided for its payment it would be added. Mr. Justice Brandeis clearly pointed out the distinction upon which the principle of nonliability for interest by the sovereign rests, and that the exception thereto resided in cases where the sovereign subjected itself to suit, and the law of the state where the action is tried provided for its recovery.

The motion of the defendants for a new trial or reduction of damages is denied.