## U. G. Fowler, Appellant, v. John B. Payne, Director General of Railroads, and Chicago & Eastern Illinois Railroad, Appellee.

### Gen. No. 27,009.

CARRIERS—*Federal control as affecting shipper's duty under shipping contract to claim loss promptly.* A shipper who made an intrastate shipment of live stock during the period of federal control of the railroads on a live stock contract which required him to make claim for damage or loss at the time of unloading and to bring suit within ninety days after the cause of action accrues, cannot recover for the loss of animals in transit where he failed to give notice of claim as required and did not bring his action within the time limited, as his obligation under such contract is not changed by the fact of Federal control, since, under the Federal Control Act of March 21, 1918, ch. 25, 40 U. S. Comp. Stats. 451, secs. 10 and 15 expressly continuing the liability of the railroads under existing laws, the State laws were not superseded or suspended by the fact of Federal control in respect to such matters.

Appeal from the Municipal Court of Chicago; the Hon. HENRY M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed November 29, 1922.

BRIGGS & SCHMUTZ, for appellant; JOHN T. MURRAY, of counsel.

EDWARD W. RAWLINS and LOUIS H. MAZURK, for appellee; HOMER T. DICK, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On March 21, 1921, the plaintiff brought suit against the defendant, the Director General of Railroads, for a breach of contract to carry from Ellis, Illinois, to the Union Stock Yards, Chicago, a carload of sheep. The cause was tried before the court without a jury and judgment entered that the plaintiff take nothing

by his suit and that the defendant recover costs. This appeal is therefrom.

The evidence in the case is contained in a stipulation of facts, together with a printed live stock contract, all of which evidence is substantially as follows:

First. That plaintiff, a shipper of live stock, on January 5, 1920, shipped from Ellis, Illinois, to Chicago, Illinois, over the line of railroad of defendant, a shipment of sheep, loaded in car C. & E. I. 52162.

Second. That a Live Stock Contract, a copy of which is included and made a part of the Affidavit of Merits filed by defendant, was issued by the defendant railroad governing the transportation of the said shipment of sheep, and which was accepted by plaintiff.

Third. That the sheep in question were loaded into the car by employees of plaintiff at point of origin and that the defendant railroad had nothing to do with the loading of the shipment, and that the way bill issued on said shipment is marked 'S. L. & C.,' which means "Shipper's Load and Count," and indicates that the railroad did not load or count the animals in the car tendered for shipment by the shipper.

Fourth. That witnesses for plaintiff, if present at the trial of this case, would testify that 127 sheep were loaded into the car at origin, while 122 sheep were unloaded at destination; either of which facts defendant has no knowledge of and could not admit nor deny the same.

Fifth. That witnesses for defendant, if present at the trial of this case, would testify that after the sheep had been loaded into the car by the shipper they (defendant's employees) applied seals 1260570 and 1260571 on the car and that said car arrived at destination with said seals intact.

Sixth. That upon arrival of the sheep at Chicago the animals were unloaded from the car into stock pens at the Union Stock Yards and permitted to become mingled with other sheep; that before said sheep were sold or mingled with other stock, and before they were removed from the place of destination, the ship-

per or consignee did not give any written notice to the nearest agent or representative of the carrier delivering said sheep of his intention to make any claim against any of the carriers that transported the sheep on account of any loss or injury to said sheep.

Seventh. That claim of plaintiff for loss and death of certain sheep was filed in writing with the defendant railroad for the first time on January 20, 1920, and that suit for said loss was not commenced until October 20, 1920.

Eighth. That plaintiff paid freight charges amounting to $18.00, being based on a freight rate of 15 cents per hundred pounds, on a weight of 12,000 pounds.''

Paragraphs 13 and 16 of the live stock contract are as follows:

''When said live stock arrives at destination and before it is sold or mingled with other stock, and before it is removed from the place of destination, if the shipper intends to make any claim against any of the carriers that have transported his stock on account of delay in such transportation or injury to said stock, or any loss thereof, it is agreed that shipper or his agent will give written notice of said fact to the nearest agent or representative of the carrier delivering said stock and will allow such representative, in person, or with the aid of others, to examine said stock in the interest of the carrier or carriers, before sale or removal of same.''

''No suit or action for the recovery of any claim for damages for death, loss, injury or delay of the live stock shall be sustainable, unless begun within ninety (90) days next after the cause of action shall accrue, and if begun later, the lapse of time shall be conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding.''

From the foregoing evidence it is shown that 127 sheep were loaded into the car, whereas only 122 sheep were unloaded at the destination, and it is contended by counsel for the plaintiff that although the latter

did not comply with the requirements of paragraphs 13 and 16 of the contract, he is entitled to recover damages on the theory that paragraphs 13 and 16 were void owing to the fact that the railroads at that time were in the possession and control of the President of the United States.

Admittedly the shipment in question was an intrastate one and it is practically conceded by counsel that if it had been moved in ordinary times, that is during private corporate operation of the railroads, the plaintiff would not be entitled to recover because of his failure to give notice of his claim in accordance with the requirements of paragraphs 13 and 16 of the live stock contract.

The argument of counsel for the plaintiff is that because the particular shipment was made while the railroad was under Federal control and operation, the Federal law superseded the State law as to the time for the filing of claims and the commencement of suit. On the other hand, it is contended by counsel for the defendant that government control and operation did not affect the rights and liabilities of shippers over the railroads or suspend or abrogate any State law on that subject.

Section 10 of the Federal Control Act of March 21, 1918, ch. 25, 40 U. S. Comp. Stat. 451, provides as follows:

"That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other Act applicable to such Federal control, or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal government."

Section 15 of the Federal Control Act provides as follows:

"That nothing in this Act shall be construed to amend, repeal, impair, or affect the existing laws or powers of the States in relation to taxation or the lawful police regulations of the several States, except wherein such laws, powers, or regulations may affect the transportation of troops, war materials, government supplies, or the issue of stocks and bonds."

In *Missouri Pac. R. Co. v. Ault,* 256 U. S. 554, 41 Sup. Ct. 593, referring to section 10, the court said: "The plain purpose of the above provision was to preserve to the general public the rights and remedies against common carriers which it enjoyed at the time the railroads were taken over by the President, except in so far as such rights or remedies might interfere with the needs of Federal operations." And further:

"The government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which would exist if there were a general receivership of each transportation system. Operation was to be continued as theretofore, with the old personnel, subject to change by executive order. The courts were to go on entertaining suits and entering judgments under existing law, but the property in the hands of the President for war purposes was not to be disturbed. With that exception, the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control.

"This purpose Congress accomplished by providing that 'carriers while under Federal control' should remain subject to all then-existing laws and liabilities, and that they might sue and be sued as theretofore." And further:

"But since levy or execution upon their property was precluded as inconsistent with the government's

needs, the liability of the transportation system was to be enforced by allowing suit to be brought against whomever, as the party operating the same, was legally responsible under existing law, although it be the government.''

If, as stated by the court in the *Ault* case, *supra,* the courts were to go on entertaining suits and entering judgments *under existing law,* but those suits were to be brought against the Director General of the railroads, it follows, in the instant case, that the State law existing at the time of the shipment in question must be considered as the law in force and applicable, and as the plaintiff failed to comply with that law, in failing to give notice of his claim and in failing to start suit seasonably, he is not now entitled to recover and the judgment should be affirmed. We are of the opinion that the shipment was intrastate, and that the State law was not suspended or abrogated.

The judgment will be affirmed.

*Affirmed.*

Thomson, P. J., and O'Connor, J., concur.