Hillsborough, }
March 4, 1924. }

## J. S. WRIGHT v. BOSTON & MAINE RAILROAD.

No action against a railroad lies by a shipper or consignee of freight for damage thereto while the railroad was under federal control.

The act of March 1, 1922 (41 U. S. Stat., c. 91, s. 206(a)), limiting the time for actions against the federal agent of railroads, does not extend the time for bringing suit upon claims already barred by the terms of the bill of lading.

CASE, for damages to five cars of apples. Trial by the court, *Branch*, J. The Dow Nurseries shipped apples to the plaintiff in Philadelphia in November and December, 1919, and the last car was delivered to him on January 5, 1920. The writ which was dated February 13, 1922, commanded the sheriff to attach the goods or estate of the Boston & Maine Railroad as under the operating management of William G. McAdoo or Walker D. Hines as director-general of the United States railroad administration. The writ was entered at the May, 1922, term of the superior court and Warren, Howe & Wilson appeared specially for the defendants.

At the September term the court permitted the defendants to strike out of the writ the words "as under the operating management of William G. McAdoo or Walker D. Hines as Director Generals of United States Railroad Administration," and denied the plaintiff's motion to strike out "the Boston & Maine Railroad, a body corporate doing business in the State of New Hampshire, as under the operating management of," and to insert after the word "administration" the words "under the Transaction [transportation] Act of Congress, 1920," and he excepted.

The court, subject to the exception, found a verdict for the Boston & Maine Railroad because (1) it was not a proper party and (2) the suit was not brought within the time limited in the bill of lading.

Transferred by *Branch*, J.

*Henry A. Cutter*, for the plaintiff.

*Warren, Howe & Wilson*, for the defendants.

YOUNG, J. It can serve no useful purpose to consider whether this is a suit against the United States, or the Boston & Maine Railroad, or whether they are both defendants. The only questions that will be considered are whether the plaintiff can maintain this

action against (1) the Boston & Maine Railroad or (2) the federal government.

1. The court has found that the Boston & Maine Railroad was operated and controlled by Walker D. Hines, director-general of railroads during all the time covered by this transaction. It is obvious, therefore, that it cannot be found that the plaintiff has been damaged by the Boston & Maine Railroad's failure to perform a duty the law imposed on it for the plaintiff's benefit; and there is no statute, state or federal, or rule of the common law which makes it responsible for the loss any shipper sustained while the road was operated by the federal government. *Lewis* v. *Hines, ante,* 24; *Missouri Pac. R. R.* v. *Ault,* 256 U. S. 554.

2. If it were conceded that the writ makes Walker D. Hines, defendant either in his capacity of director-general of railroads, or as the agent appointed by the president to defend suits arising out of the operation of the Boston & Maine Railroad by the federal government (a question as to which no opinion is expressed), it would not help the plaintiff, and that would also be true if the writ had named the person as defendant who was in fact the agent when the action was begun.

The bill of lading which the agent gave the Dow Nurseries when the apples were shipped made the bringing of the suit within two years and one day after the apples were delivered a condition precedent to the right to sue on the contract of shipment and the last car of apples was delivered more than that time before this suit was begun. The plaintiff says, however, that if it is the general rule that it is a defence to show that the shipper has failed to comply with the terms of the bill of lading, that the rule does not apply in this case because the act of congress passed February 28, 1920, provides that suits to recover for losses arising out of the operation and control of a railroad by the federal government may be brought at any time before March 1, 1922. 41 U. S. Stat., *p.* 461; Fed. Stat. Ann. Sup., 1920, *s.* 206 (a), *p.* 77. Section 206 (a) provides in substance that after the termination of federal control the president shall appoint an agent against whom suits arising out of such control may be brought at any time "within the periods of limitation now prescribed by State or Federal statutes but not later than two years from the date of the passage of this Act."

The purpose congress had in mind when this act was passed was to terminate federal control and enable the federal administration to wind up its railroad business within a reasonable time. When

we read s. 206 (a) with these facts in mind, it is obvious that the office of this section was on the one hand to give those who had claims arising out of the operation of the railroads by the federal government an opportunity to enforce them; and on the other to limit the time within which they must sue.

There is nothing in the purpose congress had in mind when it enacted this section or in the language it used to suggest that by it congress intended to give shippers who had lost their rights to sue the federal government a further opportunity or to extend the time in such cases within which a suit might be brought. On the contrary if the language of this section is given its ordinary meaning, it tends to the conclusion that it was intended, not to extend the time, but to fix a time after which no suits of this kind could be brought.

In other words the office of this section was to give those who had claims against the federal government an opportunity to enforce them after federal control terminated, and not as the plaintiff contends to give those whose rights to sue had expired before this section was passed, another opportunity.

In other words if this is an action against the federal government it stands just as it would if s. 206 (a) had not been passed. If, therefore, it is conceded the federal government is in court, the test to determine whether the plaintiff can recover is to inquire whether the bill of lading (the contract under which the apples were carried to Philadelphia) was one the parties could legally make.

As the apples were shipped from this state and Massachusetts to Pennsylvania, this raises a federal question. *Colby* v. *Company*, 77 N. H. 548. The federal court holds that a carrier may make reasonable regulations for conducting his business limiting his common-law liability, provided they are not forbidden by statute and do not attempt to release him from liability for loss or damages caused by his own negligence or that of his employees. *Adams Express Co.* v. *Croninger*, 226 U. S. 491. There is no statute, federal or state, which forbids either in terms or by implication a carrier making an agreement with his patrons that suits shall be brought within a reasonable time even if the time fixed is shorter than that fixed in the statute of limitations, and all must agree that the time fixed in the bill of lading within which a suit must be brought is reasonable.

Since this limitation was one the director-general could legally make and was accepted by the Dow Nurseries when the apples

were shipped, it must be held that the plaintiff's failure to comply with it is a bar to this suit. *Georgia, Florida & Ry* v. *Company*, 241 U. S. 190; *Chesapeake & Ohio Ry* v. *McLaughlin*, 242 U. S. 142; *Higgins* v. *Railroad*, 78 N. H. 609; *Apostolou* v. *Company, ante*, 115.

*Plaintiff's exceptions overruled: verdict and judgment for defendant.*

SNOW, J., did not sit: the others concurred.