In the Matter of the Claim of EDWARD J. O'NEIL, Respondent, against ERIE RAILROAD COMPANY, Appellant.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, November 11, 1926.

Workmen's compensation — coverage — claimant was injured on March 2, 1918 — award covers 1921-1926 — employer, a railroad, was under Federal control at time of accident — Federal control was perfected on December 28, 1917, when President acted pursuant to act of Congress of August 29, 1916 — act of March 28, 1918, was merely confirmatory — accident having occurred under Federal control, employer is not liable.

The employer, a railroad company, was not liable to pay compensation for the period from 1921 to 1926 for an injury suffered by claimant on March 2, 1918, since, at the time of the accident, the railroad was under Federal control, and especially since the award covers a period after the control of the railroad was returned to the employer, so that it could not hope to be reimbursed by the Federal government.

The contention that Federal control depended on the act of March 21, 1918, which was subsequent to the date of the accident, cannot be sustained, since the Federal government legally assumed control on December 28, 1917, when the President of the United States acted pursuant to the power vested in him by an act of Congress of August 29, 1916; the act of March 21, 1918, was merely confirmatory of the power already possessed by the President.

APPEAL by the Erie Railroad Company from an award of the State Industrial Board made on the 7th day of January, 1926.

*Moot, Sprague, Brownell & Marcy* [*John S. N. Sprague* and *James E. Foody* of counsel], for the appellant.

*Albert Ottinger*, Attorney-General [*E. C. Aiken*, Deputy Attorney-General, of counsel], for the respondents.

COCHRANE, P. J. By proclamation of the President of the United States, Federal control of the appellant's railroad began

December 28, 1917. The accident to the claimant occurred March 2, 1918, while the appellant's road was under Federal control. Under an agreement as to compensation signed by the Director-General of Railroads, the Erie Railroad Company and the claimant, the latter received as compensation $624.29 covering a period from the date of his accident to September 1, 1920. The award which is now under review on this appeal is for $3,770 and covers the period from March 15, 1921, to January 7, 1926. It is well established by Federal authority that the railroad company is not liable for this accident. (*Missouri Pacific R. R. Co.* v. *Ault*, 256 U. S. 554; *Wabash Railway Co.* v. *Elliott*, 261 id. 457; *North Carolina R. R. Co.* v. *Lee*, 260 id. 16; *Dupont De Nemours & Company* v. *Davis*, 264 id. 456, 462; *Virginian Railway Co.* v. *Mullens*, 271 id. 220.) Those cases hold that during the period of Federal control the government was in sole and complete possession of the railroads and was operating them to the exclusion of the private owners and that the control of the latter was completely suspended.

The State Industrial Board gave the following reason for its decision: " Since the claimant was injured on March 2, 1918, and since the act allowing the government to take over the railroads was not signed by the President of the United States until March 21, 1918, all rights and claims under the law must rest upon the date when the Law was passed by Congress and signed by the President." The Board was in error in assuming that Federal control depended on the act of March 21, 1918 (40 U. S. Stat. at Large, 451, chap. 25), known as the Federal Control Act. The power of the President was derived from the act of Congress of August 29, 1916 (39 U. S. Stat. at Large, 619, 645, chap. 418, § 1), known as the Army Appropriations Act of 1916, which gave the President power " in time of war   *   *   *   to take possession and assume control of any system or systems of transportation, or any part thereof   *   *   *." Under that act the President took possession of the railroads December 28, 1917 (40 U. S. Stat. at Large, 1733), the country being then at war (*Northern Pacific Railway Co.* v. *State of North Dakota*, 250 U. S. 135, 142), and he at that time " committed the possession, control, operation and utilization of such systems to a Director General designated by him for the purpose." (*Virginian Railway Co.* v. *Mullens, supra.*) The act of Congress of March 21, 1918 (40 U. S. Stat. at Large, 456, chap. 25, § 9), confirmed the authority granted by the act of 1916 and clarified the situation with respect to the rights of parties affected by Federal control. (*Missouri Pacific R. R. Co.* v. *Ault, supra; Virginian Railway Co.* v. *Mullens, supra.*) The latter case was an action against a railroad company to recover for injuries to the plain-

tiff's land resulting from an overflow of water. The courts of West Virginia held the railroad company liable. The Supreme Court of the United States in reversing the State courts said: " The chief injuries occurred in February, 1918 [prior to the act of March 21, 1918], and July, 1919, during Federal control, when in the course of two unusual freshets portions of the bank were washed away and his land was over-flowed and materially injured." After referring to the act of 1916 and the presidential proclamation of 1917, the court stated that by the act of March 21, 1918, " Congress confirmed the President's action in thus taking over the transportation systems; made provision for continuing such Federal control under the President's direction, and empowered him to exercise his authority in that regard through agencies of his selection." After referring to decisions bearing on the question, the court continued: " In principle these decisions are determinative of the question here presented. They show that Federal control did not rest on a conventional arrangement with the owner-companies, but on an exertion of supreme governmental power, and that the legislation, proclamation and order before recited contemplated a complete separation of the companies from the roads while under such control, and an absence of responsi-bility by the companies for losses and injuries resulting from the use, operation and maintenance of the roads during that period." In *North Carolina R. R. Co.* v. *Lee* (*supra*) an employee was killed in March, 1919. His administratrix brought an action in North Carolina against the North Carolina Railroad Company, a lessor of the railroad, asserting liability " under a local rule by which a railroad corporation is liable for injuries resulting from a lessee's negligence in operation." The courts of that State held the lessor railroad liable but on certiorari to the Supreme Court of the United States that court reversed the judgment of the State court, saying: " To permit an action for injuries suffered during Federal control to be brought either against the Southern Company as lessee, or against the North Carolina Company as lessor, would be inconsistent with the provisions of that act." (Federal Control Act.) In *Wabash Railway Company* v. *Elliott* (*supra*) a brakeman on that railroad was fatally injured on April 2, 1918, while the railroad was in possession of the United States and was being operated by the Director-General of Railroads. The court said (at p. 462): " Whatever claim the administratrix had for Welker's injury and death was against the Director-General, not the company."

The Attorney-General here cites the case of *Bryant* v. *Pullman Company* (188 App. Div. 311; affd., 228 N. Y. 579). That case is distinguishable. No opinion was written in the Court of Appeals but this court in its opinion likened the relation of the

railroad company and the government to that of a lessor and lessee and continued: "The question is not one of substance. If the lessee was carrying on its business through the lessor, and the latter is required to pay compensation under this award, it has ample recourse against the lessee, and undoubtedly any liability imposed upon it will be met in the adjustment of the rentals. We consider the question more one of technicality than of substance." The awards in that case were made during the period of Federal control and it was for that reason that the court said that any liability imposed upon the company would be met in the adjustment of rentals. That reason no longer applies. Federal control long since terminated (Transportation Act of 1920 [41 U. S. Stat. at Large, 457], § 200) and an award now made against this appellant probably cannot be adjusted in any settlement with the government. The question is no longer one of "technicality" but in a very real sense one of "substance." Furthermore the awards in that case were made prior to General Order No. 50 which was issued October 28, 1918, and which provided that claims for death or personal injuries should be prosecuted against the Director-General of Railroads and not otherwise. (*Virginian Railway Co. v. Mullens, supra; Missouri Pacific R. R. Co. v. Ault, supra,* 561.) During the period of Federal control prior to General Order No. 50, actions and proceedings were prosecuted nominally against the transportation companies although really against the government for the reasons stated in the opinion in the *Bryant* case that it was not a matter of substance inasmuch as a recovery could be adjusted between the company and the government. In the *Ault* case it was said: "In the absence of explicit direction, it was perhaps natural that those wishing to sue the carrier should have named the company as defendant when they sought to hold the government liable. * * * All doubt as to how suit should be brought was cleared away by General Order No. 50, which required that it be against the Director-General by name."

It follows that the award should be reversed and the claim dismissed, with costs against the State Industrial Board.

All concur.

Award reversed and claim dismissed, with costs against the State Industrial Board.