PEOPLE OF the STATE OF CALIFOR-
NIA ex rel. CALIFORNIA REGION-
AL WATER QUALITY CONTROL
BOARD, SAN FRANCISCO REGION,
Plaintiff,

v.

The DEPARTMENT OF the NAVY et al.
Defendants.

No. C–72–1865 SC.

United States District Court,
N. D. California.

Dec. 28, 1973.

Evelle J. Younger, Atty. Gen. of the State of Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for defendants.

## ORDER

CONTI, District Judge.

This matter is before the court on plaintiffs' motion for partial summary judgment on affirmative defenses two through seven of defendants' second amended answer. This dispute arises out of an oil spill in San Francisco Bay. On March 12, 1972, approximately 3,000 gallons of oil gushed into the Bay from the USS Midway, berthed at the Alameda Naval Air Station. The clean-up

was performed exclusively by the Navy, at an announced cost of $77,000. The cause of the spill is in dispute; the Navy maintains that sabotage was responsible.

Having notified the interested parties, the California Regional Water Quality Control Board, San Francisco Bay Region, held a hearing on May 23, 1972, to determine whether the discharge occurred in violation of Water Code Section 13350(a)(3).[1]

The Board found that Captain William Harris, Commanding Officer of the Midway, and the Honorable John H. Chaffee, Secretary of the Navy, were the persons responsible for the deposit. It then requested the State Attorney General to petition the Superior Court to impose, assess, and recover from the U. S. Navy a sum not to exceed $6,000 for each day on which the deposit occurred. The Attorney General thereupon filed suit on September 7, 1972, in Alameda Superior Court, naming as defendants the Department of the Navy; John W. Warner, Secretary of the Navy; Admiral C. J. Van Arsdall, Jr.; Captain William Harris; and Does One through Twenty. The case was subsequently removed to this court.

Defendants' second amended answer raises seven defenses to this action: (1) defendants did not cause the spill; (2) the Department of the Navy is an agency of the United States which can neither sue nor be sued; (3) the United States has neither consented to be sued nor waived its sovereign immunity; (4) the U. S. Constitution bars plaintiff from imposing a civil penalty upon the United States or its officers and agencies; (5) defendants are privileged and immune from suit for acts or omissions arising out of the exercise of their official duties or functions; (6) the court lacks jurisdiction over the Doe defendants; and (7) plaintiff has failed to state a claim. Plaintiff seeks partial summary judgment on defenses two through seven.

Plaintiff contends that defendants have exceeded the limitations of their authority, therefore rendering themselves liable to suit. Such limitations are contained in the Federal Water Pollution Control Act (33 U.S.C. § 1151 et seq., amended and reorganized subsequent to the date of the event complained of, Pub.L. 92–500, October 18, 1972, 86 Stat. 816), Executive Orders 11507 and 11514, and the National Environmental Policy Act (42 U.S.C. §§ 4321–4335). Plaintiff also refers to California v. Davidson, 3 ERC 1157 (N.D.Cal.1971), wherein Judge Weigel held that the doctrine of sovereign immunity did not bar California's action for injunctive and monetary relief against the Commanding General of Fort Ord Military Reservation. In response the defendants primarily argue that the relief requested by plaintiff (a $6,000 per day civil liability authorized by California Water Code Section 13350) amounts to a penalty. Citing Missouri Pacific R. Co. v. Ault, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087 (1921), defendants contend that plaintiff is precluded from imposing this civil penalty upon officers and agencies of the federal government.

Plaintiff's exposition of the legislative history of the Federal Water Pollution Control Act indicates strongly that federal agencies must comply with applicable water quality standards as established by state and local governments. In view of *Ault*, however, defendants are correct in their contention that federal agencies and officers cannot be held liable for civil penalties.

---

1. § 13350. Civil liabilities; recovery of amount.

(a) Any person who . . . (3) causes or permits any oil or any residuary product of petroleum to be deposited in or on any of the waters of the state, except in accordance with waste discharge requirements or other provisions of this division, may be liable civilly in a sum of not to exceed six thousand dollars ($6,000) for each day in which such violation or deposit occurs.

The situation in this action is strikingly similar to that in *Ault*. That case originally involved a suit against the Missouri Pacific Railroad Company to recover a penalty allowed under Arkansas law when an employee is discharged and not reimbursed for his full wages within seven days. The President had taken possession and control of the railroad under powers granted to him in time of war; the Director General of Railroads who exercised control over the railroad in the name of the President, was joined as a defendant. A judgment imposing the penalty upon the Director and the railroad was affirmed by the Arkansas Supreme Court.

The case was then brought before the U. S. Supreme Court by writ of error. The state argued that the Federal Control Act (March 21, 1918, chap. 25, 40 Stat. 451) permitted the imposition of a penalty upon the Director. Section 10 of that Act provided in part "That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except insofar as may be inconsistent with the provisions of this act or any other Act applicable to such Federal control or with any order of the President." Section 15 stated that the "lawful police regulations of the several states" shall continue unimpaired. Recognizing that the Director General became the "carrier" while he controlled the railroad, the court nevertheless reversed the judgment:

"By these provisions the United States submitted itself to the various laws, state and federal, which prescribed how the duty of a common carrier by railroad should be performed, and what should be the remedy for failure to perform. By these laws the validity and extent of claims against the United States, arising out of the operation of the railroad, were to be determined. But there is noth-

ing either in the purpose or the letter of these clauses to indicate that Congress intended to authorize suit against the government for a penalty, if it should fail to perform the legal obligations imposed. The government undertook, as carrier, to observe all existing laws; it undertook to compensate any person injured through a departure by its agents or servants from their duty under such laws; but it did not undertake to punish itself for any departure by the imposition upon itself of fines and penalties, or to permit any other sovereignty to punish it.

\*　\*　\*　\*　\*　\*

The purpose for which the government permitted itself to be sued was compensation, not punishment \* \* \* Wherever the law permitted compensatory damages, they may be collected against the carrier while under federal control \* \* \* But double damages, penalties and forfeitures, which do not merely compensate but punish, are not within the purview of the statute \* \* \* The amount recovered in the present case over and above the wages due and unpaid, with interest, is \* \* \* in the state statute \* \* \* But whether in a proceeding against the Director General it shall be deemed compensation or a penalty presents a question not of state, but of federal, law. Whatever name be applied, the element of punishment clearly predominates, and Congress has not given its consent that suits of this character be brought against the United States. The judgment against the Director General, so far as it provided for recovery of the penalty, was erroneous." 256 U.S. at 563–565, 41 S.Ct. at 597.

■ A similar situation exists in the present case. The Federal Water Pollution Control Act has undoubtedly imposed duties on the agencies and officers of the federal government (33 U.S.C. §

1171(a)).[2] Section 1161(*o*)(2)[3] permits the states to impose liabilities for the discharge of oil into state waters. However, as in *Ault*, this statutory framework contemplates only compensatory actions against the federal government, its agencies or officers. Nowhere in that chapter is there language authorizing imposition of penalties against such potential defendants.

Plaintiff contends that this general proposition asserted by defendants is not applicable here. It argues that the purpose of Water Code § 13350 is to compensate the state for environmental damages arising from oil spills. The effects of such spills are so difficult to quantify that traditional actions for damages are unavailing. Thus Section 13350, which also utilizes various factors in determining the extent of liability (Water Code § 13350(b))[4] attempts to compensate the state, in an approximate sense, for damages caused by a spill.

Nevertheless, the impact of this section is more punitive than compensatory. Several factors enumerated in subsection (b), such as "the nature and persistence of the violation" and the "corrective action, if any, taken by the discharger", manifest an intent to punish "wrongdoers", rather than merely compensate the state for damages to the environment. Further, subsection (d) provides: "Remedies under this section are in addition to, and do not supersede or limit, any and all other remedies, civil or criminal." This would, of course, permit the state to sue for damages, recover, and then bring an action under this section to recover an additional $6,000 per day. Clearly, this indicates that the Legislature intended that this section be used to recover penalties. Finally, and most convincing, plaintiff itself characterizes the liability imposed under this section as a penalty. Although its reply brief contends that Section 13350 is designed primarily for compensation, plaintiff has consistently denominated the civil liability of Section 13350 as a "penalty". (See plaintiff's memorandum of points and authorities in support of motion for partial summary judgment, filed September 13, 1973, page 12; plaintiff's certificate of counsel, filed June 14, 1973, pages 1–2; plaintiff's certificate of counsel, filed April 16, 1973, pages 1–2; first amended complaint, filed February 20, 1973, page 3; plaintiff's memorandum of points and authorities in support of motion for partial summary judgment, filed January 22, 1973, page 8; plaintiff's memorandum of points and authorities in opposition to motion to dismiss, filed December 7, 1972, page 1; and plaintiff's complaint, filed in Alameda County Superior Court on September 7, 1972, pages 2–3.) Indeed, in the certificates of counsel referred to above, plaintiff stated that the basic issue in this case is the constitutional and statutory question whether a state may impose *civil penalties* for violations of its water quality laws upon officers and agencies of the United States. Thus, this action does fall within the rule of *Ault*, thereby prohibiting the state from

---

2. 33 U.S.C. § 1171(a) provides in part: "(a) Each Federal agency (which term is used in this section includes Federal departments, agencies, and instrumentalities) having jurisdiction over any real property or facility, or engaged in any Federal public works activity of any kind, shall, consistent with the paramount interest of the United States as determined by the President, insure compliance with applicable water quality standards and the purposes of this chapter in the administration of such property, facility, or activity . . . ."

3. 33 U.S.C. § 1161(*o*)(2) provides in part: "Nothing in this section shall be construed as preempting any State or political subdivision thereof from imposing any requirement or liability with respect to the discharge of oil into any waters within such State."

4. California Water Code § 13350(b) provides: "The Attorney General, upon request of the regional or state board, shall petition the superior court to impose, assess and recover such sums. In determining such amount, the court shall take into consideration all relevant circumstances, including but not limited to, the extent of harm caused by the violation, the nature and persistence of the violation, the length of time over which the violation occurs and corrective action, if any, taken by the discharger."

attempting to impose on the defendants a liability under Water Code § 13350. Since *Ault* is the controlling authority in this instance, plaintiff's reliance upon *Davidson* is unfounded.

Defendants also raise certain points with respect to the notice given by the Board, the findings of the Board and the naming of Doe defendants in the complaint. However, since the determination on the civil penalty issue precludes plaintiff from proceeding, these other issues need not be decided. Nor is it necessary to determine the validity of every affirmative defense attacked by plaintiff's motion.

 Defendants, in opposing this motion, have not countered with their own motion for summary judgment. However, despite such failure, this court has the authority to grant summary judgment to the non-moving party. (See Moore's Federal Practice, Vol. 6, P. 2241 et seq.) Since the rule in *Ault* applies in this case, thereby preventing plaintiff from continuing its action to impose a civil penalty under California Water Code § 13350, summary judgment in favor of defendants is appropriate.

It is, therefore, the order of the court that summary judgment be granted in favor of defendants and that the action be dismissed.

Dated: December 26, 1973.